[ No. 8,287.—Department Two.]
Sept. 20, 1882.

## LUIS OLIVAS ET AL. v. TEODORA LOPEZ DE OLIVAS.

CONSTRUCTIVE TRUST—FRAUD—REFORMATION OF DEED—DISTRIBUTION OF ESTATE OF DECEASED PERSON—PRETERMITTED CHILDREN—WILL—SUFFICIENCY OF EVIDENCE TO SUSTAIN FINDING.—O., by his will, demised and bequeathed all his estate to his widow, but did not mention in his will the names of his children. After his death, pending proceedings for the final distribution of his estate, the children executed to the widow a deed of conveyance of all their interest in the estate, and subsequently all of the estate was distributed by the Probate Court to her. In an action by two of the children against the widow, to establish a trust in their favor in certain real property distributed to her, the Court found that the deed was procured by false and fraudulent representations as to its contents, by which they were led to believe that it was a conveyance for the life of the defendant only, and also by promises of the defendant as to certain future advances, which the defendant failed to keep; and rendered judgment for plaintiffs.

Held: 1. The findings of the Court are sustained by the testimony of at least two witnesses, and it was the exclusive province of the trial Court to pass upon the credibility of the witnesses.

2. The Court did not err in not rendering a decree to reform the deed so as to make it express the intention of the parties. The gravamen of the complaint is fraud practiced by the appellant in obtaining the execution of the instrument, coupled with the additional averment that the defendant has wholly neglected to comply with the terms and conditions upon which the deed was executed. The facts found were sufficient to justify the Court in making the decree complained of, which in effect sets aside and cancels the deed.

3. The fact that the fraud complained of was discovered in time for plaintiffs to have availed themselves of it in the Probate Court does not affect their right to relief in a Court of Equity. It may be admitted that they could have successfully opposed the order of distribution in the Probate Court, but it does not follow that they did not have a right to go into equity for the purpose of setting the deed aside on the ground of fraud.

APPEAL from a judgment for plaintiffs and from an order denying a new trial in the Superior Court of the County of Ventura. HINES, J.

*Hall & English, Williams & Williams, Smith & Hupp*, and *Glassell, Smith & Patton*, for Appellant.

*J. Hanna, L. C. Pettinos*, and *J. M. Brooks*, for Respondents.

MORRISON, C. J.:

This was a proceeding to establish a trust in favor of the plaintiffs, and against the defendant, in certain property situate in the county of Ventura. The principal facts out of which it is claimed the trust arises are fully set out in the findings of the Court, and to these findings we will refer.

The plaintiffs are two of the children and the defendant is the widow of the late Raymundo Olivas, who died on the twenty-first of February, 1879, and who was, at the time of his death, seised of an estate valued at fifty thousand dollars, or thereabouts. On the twenty-ninth of March, 1879, the last will and testament of Raymundo Olivas was admitted to probate in the Probate Court of Ventura County, and on the twentieth of October, 1880, a final order of distribution of the estate was made by the Court. By his will the deceased devised and bequeathed all of his estate, of every character, to the defendant, and did not therein mention the name or names of any of his children. On the seventeenth of March, 1880, within one year after the probate of the will and before the order of distribution was made, the plaintiffs filed their petitions in the Superior Court (which had succeeded to the jurisdiction of the former Probate Court of Ventura County), praying for a revocation of the probate of the will, and opposing a distribution of the estate in accordance with the terms of the will, on the ground that the testator has neglected to make any provision for them, or to mention them in his will, and the defendant was duly cited to appear and answer said petition. The Court then finds:

" VI. That upon the day fixed by said Superior Court for the hearing of said contest and said opposition, the defendant sought out plaintiff Refugia, and requested and begged her not to proceed with her said contest to revoke the probate of said will, and to withdraw her opposition to the distribution of the estate of her father to the defendant; and then and there proposed to and promised said plaintiff Refugia, that if she would withdraw her contest and opposition to distribution, and would execute, acknowledge, and deliver to her, defendant, a deed conveying to defendant her interest in said estate, for and during the life of defendant, reserving to her-

self (plaintiff) the reversionary interest therein, that she, plaintiff, should be entitled to and should have her proper share and proportion in the rents and profits of said estate, for her support during the life of defendant; and as a further consideration and inducement, defendant also agreeing to advance immediately to plaintiff Refugia, the sum of five hundred dollars, with which to buy her a home, or to purchase for her a house and lot in the town of San Buenaventura."

"VII: That reposing trust and confidence in her mother (the defendant), and believing her said representations and promises, plaintiff Refugia, in connection with her brother (plaintiff Luis Olivas), was induced by said promises to, and did, on the twentieth day of March, 1880, execute, acknowledge, and deliver, to her mother (the defendant) a deed of grant, bargain, and sale, purporting to convey to defendant in fee all the interest of the plaintiff Refugia in and to the estate of her deceased father for the consideration therein expressed of one dollar. That said deed was prepared by a notary public, being at the same time the attorney of the defendant and wholly under her direction, and was and is written in the English language, whereof plaintiff was and is entirely ignorant, being then and now unable to read, write, or speak it; nor could she then or now read or write her mother tongue—the Spanish. That before and at the time of the execution of said conveyance, defendant, intending to deceive, mislead, and defraud plaintiff out of her interest in the estate of her father, caused said conveyance to be read and translated in the Spanish language, as a conveyance of plaintiff's interest in the estate of her deceased father to defendant for life, and not as a conveyance in fee. That the notary public in taking her acknowledgment thereto, did not truly make her acquainted with the contents of said deed, but read and translated the same in such manner as to induce and lead plaintiff to believe therefrom that it was a conveyance to defendant for her natural life only, of the interest of plaintiff Refugia in the Rancho San Miguel, with reversion back to plaintiff on the death of defendant."

Finding XI relates to the plaintiff Luis Olivas, and is similar to findings VI and VII in respect to the other plaintiff.

"Finding XII: That the defendant intending and contriv-

ing to defraud plaintiff, and to deprive him of his share in the estate of his deceased father, did on the twentieth day of March, 1880, cause to be prepared a deed, absolute on its face, conveying to her (defendant) in fee, all of plaintiff's interest in the Rancho San Miguel, and not a life estate therein as agreed; said deed being in the English language, which language plaintiff could neither read, write, nor speak. That intending to deceive, mislead and defraud plaintiff, defendant caused said deed to be read and translated to plaintiff in the Spanish language (his mother tongue, but which he could not read or write), in such manner as to cause plaintiff to think and to believe that it was a conveyance for life, and not of any other or greater interest. That said deed was read and translated to him by the notary who took his acknowledgment at the same time and to the same effect as to his sister Refugia, as stated in Finding VII. That, confiding in the representations of his mother, the defendant, and believing such false and fraudulent representations and promises of defendant, he, the plaintiff, did on the twentieth day of March, so execute and deliver said conveyance to defendant."

"Finding XIV: That ever since the date of the execution and delivery of said deed by plaintiffs Refugia and Luis to defendant, defendant has been and now is in possession of the whole interest of both and each of plaintiffs in the estate of their deceased father, and has not paid or delivered to plaintiffs, or either of them any part or portion of the rents, issues and profits thereof."

On the foregoing and other findings of fact, the following were the conclusions of law:

"1. That plaintiffs Refugia Olivas de Lombardo and Luis Olivas are entitled to a decree that defendant Teodora Lopez de Olivas holds the real estate of Raymundo Olivas, deceased, to wit: The east half of the Rancho San Miguel, in trust for plaintiffs Refugia and Luis, to the extent of their interests therein.

"2. That defendant be required to convey to plaintiffs, by deed of grant, bargain, and sale, their respective undivided interests therein as conveyed by them to defendant by their deed dated March 20, 1880, or, that in default of such con-

veyance for the period of thirty days, a Commissioner of this Court do it for her.

"3. That defendant account to plaintiffs for shares of the rents, issues, and profits of said real estate since October 2, 1880, corresponding to their respective interests therein.

"4. That plaintiffs have judgment for their costs of suit."

There was a demurrer to the complaint, which was overruled by the Court, and on this, the first assignment of error is predicated. The complaint set out substantially all the facts found by the Court, and was sufficient to constitute a cause of action against the defendant. (Kerr on Fraud and Mistake, 80; Story's Eq. 190, b.)

There are three points made by the appellant which we deem it necessary to notice, the first being that the findings of the Court were contrary to the evidence. This ground of objection is answered by the fact, that there was a substantial conflict in the evidence upon the material points in the case; and the rule is well settled, that when such conflict exists, this Court will not interfere with the judgment of the Court below. The question is not what would have been our opinion of the facts, if the case had been tried before us, but it is simply whether there was sufficient evidence to justify the Court below in holding as it did, although we may be satisfied that there was a preponderance of evidence on the other side. The findings of the Court are sustained by the testimony of at least two witnesses, and it was the exclusive province of the trial Court to pass upon the credibility of the witnesses. The rule has been settled by so many adjudged cases in this Court, that it is unnecessary to do more than refer to it.

2. The second point made by appellant is, that the remedy of the respondents was by a bill in equity to reform the deed, so as to make it express the intention of the parties. If the respondents had relied simply on a mutual mistake, there would, perhaps, be some ground on which to base appellant's proposition. But the gravamen of respondents' complaint is, fraud practiced by the appellant in obtaining the execution of the instrument, coupled with the additional averment that the defendant, appellant, has wholly neglected to comply with the terms and conditions upon which the deed was executed.

We think that the facts found by the Court were sufficient to justify it in making the decree complained of, which, in effect, sets aside and cancels the deed.

3. The third point is, that the fraud complained of was discovered in time for plaintiffs to have availed themselves of it, in the Probate Court. We can not perceive how this fact in any manner affects the plaintiffs' right to relief in a Court of equity. This is a direct attack upon the deed, founded upon fraud in obtaining its execution, and there can not be any doubt that such a proceeding will be maintained in a case where fraud in procuring the execution of an instrument is established to the satisfaction of a Court of equity. It may be admitted that the plaintiffs could have gone into the Probate Court, and could there have successfully opposed the order of distribution; but it by no means follows therefrom, that they did not have a right to go into a Court of equity for the purpose of setting the deed aside on the ground of fraud.

Judgment and order affirmed.

SHARPSTEIN and THORNTON, JJ., concurred.