133 489
138 360
133 489
141 63
141 368
141 369
133 489
145 374

[L. A. No. 836.   Department One.— July 31, 1901.]

LOUISA J. MORE and WALLACE H. MORE, Respondents, v. THOMAS R. MORE and ALFONZO L. DEN, Appellants; and H. J. FINGER and E. F. ROGERS, Respondents.

DEEDS PROCURED BY FRAUD AND UNDUE INFLUENCE — CONSTRUCTIVE TRUST — EQUITY JURISDICTION. — Where deeds are established to have been procured by fraud and undue influence, in pursuance of a conspiracy between an elder brother and his grantee to defraud a younger brother, whose mental capacity was weak, and who was incompetent to transact business, a constructive trust arose upon their execution, and a court of equity has jurisdiction to annul the deeds, and to compel a reconveyance of the property, upon equitable terms.

ID. — RESCISSION NOT AN EXCLUSIVE REMEDY FOR FRAUD — RECONVEYANCE FROM FRAUDULENT GRANTEE — PLEADING. — Rescission is not an exclusive remedy in cases of fraud; and where property is obtained by fraud, a court of equity may convert a fraudulent grantee into a trustee, and direct a reconveyance from him, upon terms appropriate to the case, when justified by the facts alleged in the complaint, and by the prayer for general relief.

ID. — SCOPE OF POWER OF CANCELLATION — FAILURE TO RESCIND — PAYMENT TO IRRESPONSIBLE PERSON — ENCUMBRANCE OF PROPERTY BY GRANTEE. — The power of a court of equity to cancel a contract for fraud is of wider scope than that of rescission to be effected by the acts of the parties. Although its exercise may be refused in certain cases, for failure of the injured party to avail himself of the right to rescind, yet it will not be so refused where the injured party is unable to pay back money received, as the anticipated result of its payment to him as an irresponsible person, who was deterred by the same influences which defrauded him from seeking relief therefrom, and where the property had been encumbered by the grantee with valid mortgages in excess of the payments received, so that nothing was to be returned to the grantee.

ID. — RECOVERY OF POSSESSION OF NOTE OF FRAUDULENT GRANTEE — DEED NOT RATIFIED. — The recovery, by the wife of the defrauded party, as his successor in interest, of the possession of a note given by the fraudulent grantee in consideration of the fraudulent deed, of which note such grantee had wrongfully obtained the possession, cannot be regarded as a ratification of the fraudulent deed, where it appears that at that time the property had been heavily encumbered by the fraudulent grantee. The wife was entitled, for her security, to the possession of the note, until she should obtain the equitable relief due to her, as successor of her defrauded husband.

ID.— FRAUD IN DEED OF INTEREST IN ESTATE — DECREE OF DISTRIBUTION
NOT CONCLUSIVE OF EQUITIES. — Where the fraud committed by the
grantee was in the obtaining of a deed of the interest of the grantor
in the estate of a deceased person, the decree of distribution of the
estate to the fraudulent grantee, as successor of the defrauded party,
is not conclusive of the equities between the parties, or of the con-
structive trust raised by the fraud, where such matter was not
actually litigated in the matter of the estate; and, it seems, it was
not a proper subject of consideration therein.

ID.— ORDER OF DEFRAUDED PARTY FOR DISTRIBUTION TO GRANTEE—
TAINT OF FRAUD.— An order of the defrauded party for distribution
of the estate to the fraudulent grantee, which was tainted with the
same fraud as the original deed, can add nothing to the force of the
deed.

APPEAL from a judgment of the Superior Court of Santa
Barbara County. W. S. Day, Judge.

The facts are stated in the opinion.

C. F. Carrier, and Richards & Carrier, for Thomas R. More,
Appellant.

C. A. Storke, for A. L. Den, Appellant, and for H. J. Finger
and E. F. Rogers, Respondents.

J. W. Taggart, for Plaintiffs, Respondents.

SMITH, C.— The plaintiff Wallace More is one of the heirs
of A. P. More, deceased, his interest in the estate being one
twenty-seventh of the whole, and of the value of ten thousand
dollars. The plaintiff Louisa is his wife, and by virtue of a
deed made to her by him, January 5, 1895, has succeeded to
whatever interest he had in the estate at that date. The defendant
Thomas More is the grantee in three several deeds executed to
him by Wallace More, purporting to convey to him the whole
interest of the grantor in the estate,—one of date October 21,
1893, one of date October 30, 1893 (in fact executed November
4, 1893), and the other of date April 27, 1894. The defendant
Den is grantee in a deed from Thomas More, of date Novem-
ber 17, 1893, purporting to convey to him one half of the
interest of Wallace in the estate. The other defendants
(Rogers and Finger) are *bona fide* mortgagees under mort-
gages made by Thomas More to secure,— to the former, a note
for one thousand dollars (now owned by Finger); to the latter,

a note for three thousand four hundred dollars; and their interests are not involved in this appeal.

The suit was brought to annul the above deeds from Wallace to Thomas More. The plaintiffs recovered judgment, from which the defendants More and Den appeal, on the judgment roll. The case presented by the findings, briefly stated, is as follows: The plaintiff Wallace, it is found, was, at the time of the death of A. P. More, addicted to the use of intoxicating drinks to such an extent as to seriously interfere with his mental capacity to transact business, and at times to deprive him of reason and judgment, rendering him unable to properly manage his business and to take care of his property. He was otherwise a man of weak and pliable character, shrewd in procuring funds for present needs, but reckless as to future results, and his condition, habits, character, and susceptibility were well known to the defendant Thomas More, his elder brother, who for a long period has exercised great influence over him. Under these circumstances the defendants Den and More conspired together "to fraudulently acquire the interest of Wallace" in the estate of the deceased, and, presumably, the deeds in question were procured by Thomas More in pursuance of this conspiracy.

At the time of the execution of the deed of October 21, 1893, and of the deed of October 30th, "the plaintiff Wallace [it is found] . . . was not competent to transact business." The former of these deeds—which was executed on the day of the death of the deceased, and duly recorded—purports to be "in trust, . . . to collect any interest or bequest coming to [the grantor] from the estate, etc., and then to pay to [the grantor] a sum not to exceed twenty dollars per month . . . until the same, with necessary costs and disbursements in caring for his estate so recovered, consume the whole amount." The deed of October 30, 1893 (executed November 4th), which purports to be "in consideration of one dollar and other considerations," is absolute on its face, but was accompanied by an instrument in writing, signed by the grantee, Thomas More, in which, after reciting the conveyance, and that it was made in order that the grantor, Wallace, might "have a steady and determined income, and have the means to provide for his immediate wants," the grantee, Thomas, agrees to pay Wallace, "during his natural life, the sum of fifty dollars, payable on

the 1st of each and every month," etc., with proviso for the termination of the obligation at any time by the payment of five thousand dollars and back payments, and further agrees within thirty days to pay Wallace "the further sum of one thousand dollars, to the end that said Wallace . . . may have some immediate money with which to relieve his immediate wants, and to provide him with the necessary means to take the Garten or Keeley cure."

The deed of April 27, 1894, is also an absolute conveyance, with release of all trusts, obligations, etc., and purports to be in consideration of $9,358.75 in hand paid, etc. The actual consideration consisted of a note of defendant More for $3,500, a note of defendant Den for $3,500, a draft of $490, with $10 cash, and payments previously made by Thomas to Wallace, under former deeds, amounting to $2,358.75, the total aggregating $9,858.75, being $500 in excess of the consideration named in the deed. There was also paid, at the same time, $500 on the note of Thomas More.

The deed was accompanied by a written order signed by Wallace, addressed to the Hon. J. V. Coffee, judge, etc., and John F. More, administrator of the estate of A. P. More, deceased, notifying them of the conveyance, and authorizing and directing them to distribute his interest in the estate at the proper time to Thomas More, the grantee; and, accordingly, in a proceeding, in the matter of said estate, to determine the rights of parties therein, under section 1664 of the Code of Civil Procedure, a judgment was entered, September 5, 1895, declaring the estate to be owned by the parties and in the proportions named in the judgment, and (among other allotments) an undivided twenty-seventh interest to Thomas More, "as assignee of Wallace H. More."

There are some other facts found, on which points are made by the appellants, which will be briefly stated. The one thousand dollars referred to in the deed of October 30, 1893, — presumably advanced by Den, — were paid to Wallace More, who then went to the Garten cure at Ontario, and was temporarily cured of the liquor habit. In November, 1893, after he was discharged, "he received, and receipted for to Thomas More, on account of the agreement, . . . the further sum of $1,208.75, a sum in excess of the agreement," etc. Of the notes given as consideration of the deed of April 27, 1894, Den's note was afterwards sold to him by Wallace (when in a state of intoxi-

cation) for two thousand dollars, which was received by Wallace
and not returned.   The note of Thomas More seems in some way
to have come into his own possession, and, January 25, 1895,
the plaintiff Louisa (to whom it had been assigned) recovered
a judgment against him for its return or value.

There was no attempt on the part of the plaintiffs, prior to
the filing of the complaint, to rescind the deeds in question,
nor did they restore or offer to restore (otherwise than in the
complaint) the consideration received.   But the judgment re-
quires the surrender of the notes from Thomas More and from
Den, and the payment to the latter of the sum of three thou-
sand dollars, as conditions of their conveyance to the plaintiff
Louisa, and also affirms the validity of the mortgages of
Finger, amounting to four thousand four hundred dollars and
interest.

On the facts found, there can be no doubt that the deed of
April 27, 1894, from Wallace to Thomas More,—as was the
case with the previous deeds,—was procured by fraud and un-
due influence, or that there arose upon its execution a con-
structive trust in favor of the former.   (Civ. Code, secs. 2219,
2224, and cases cited in note in annotated edition, 2228 et seq.;
*Olivas* v. *Olivas*, 61 Cal. 382; *Alaniz* v. *Casenave*, 91 Cal. 41.)
This is not disputed by the appellants' counsel, but it is con-
tended, in effect,—1. That plaintiffs, having received the con-
sideration, and having failed to rescind or to offer to rescind,
have lost their right; 2. That the judgment recovered by the
plaintiff Louisa against Thomas More for the recovery of his
note was a ratification of the deed, and thus operates as an
estoppel *in pais;* and 3. That the plaintiffs are estopped by
the judgment rendered in In the Matter of the Estate of A. P.
More, Deceased, under section 1664 of the Code of Civil Pro-
cedure.

None of these points can be sustained.

1. With regard to the first, rescission is only one of the rem-
edies in cases of fraud (*Field* v. *Austin*, 131 Cal. 379, and cases
cited); and in cases where real or personal property is thus
obtained, the most common and familiar relief granted by a
court of equity is to convert the party guilty of the fraud into
a trustee.   (1 Perry on Trusts, secs. 166 et seq., and authori-
ties cited *supra.*)   The relief granted by the court—namely,
reconveyance on the terms imposed by the judgment—was
appropriate to the case, and was justified by the facts alleged

in the complaint, and by the prayer for general relief. (Code Civ. Proc., sec. 580.) The rigid rules appealed to by the counsel apply only to rescission to be effected by the acts of the parties. The power of a court of equity to cancel a contract is of much wider scope, and its exercise is governed by other principles. The court may refuse to exercise the power, in certain cases, for failure of the injured party to avail himself of his right to rescind, but not in a case like this, where the injured party was unable to pay back the money, and his inability was the natural — and, as such, to be anticipated — result of the act of the defendants in advancing money to a person so irresponsible; where, also, the same influences that made it practicable to defraud him would deter him from seeking relief from the fraud; and where, at the time the plaintiff Louisa became interested, the property had been encumbered by Thomas More by valid mortgages to an amount in excess of the money that had been received by Wallace, and there was therefore nothing to be returned.

2. The suit and judgment of the plaintiff Louisa against Thomas More for the recovery of the note — which must have been, if not fraudulently, at least wrongly, obtained by him — cannot be regarded as a ratification of the deed. At that time the property had been heavily encumbered by the Finger mortgages, and she was entitled, for her security, to the possession of the note, until she had received the relief due to her.

3. Nor can the judgment in the superior court, in In the Matter of the Estate of A. P. More, under section 1664 of the Code of Civil Procedure, operate as an estoppel. It is not clear that the court could have entertained jurisdiction of the equitable rights of Wallace arising out of the deed. In such proceedings, the court has jurisdiction of the claims of assignees of the heir, but it has not been held that its jurisdiction extends to claims of an equitable nature against the legal owner, or in other words, to trusts. (*Estate of Burton*, 93 Cal. 461, 462.) It cannot, indeed, be said that the court, in matters of probate, has no equity jurisdiction; but it does not follow that it has general equity jurisdiction, or any equitable jurisdiction, beyond what is involved in the exercise of its peculiar functions, which are to administer and distribute the estate. Where a trust has been created by will, the validity of the trust is necessarily involved in the question of distribution; for if invalid,

the bequest fails. (*Estate of Walkerly*, 108 Cal. 660.[1]) Hence, as necessary to distribution, "it is within the province of the probate court to define the rights of all who have legally or equitably any interest in the property of the estate, *derived from the will.*" (*Estate of Hinckley*, 58 Cal. 518; *Siddall* v. *Harrison*, 73 Cal. 563, 564; *Crew* v. *Pratt*, 119 Cal. 139; *Goad* v. *Montgomery*, 119 Cal. 552.[2]) But (prior to the enactment of sections 1699–1703 of the Code of Civil Procedure, "conferring a limited jurisdiction over testamentary trustees on the probate side of the superior court") the court, after distribution to the trustee, had no further control over the trust. (*Morffew* v. *San Francisco etc. R. R. Co.*, 107 Cal. 594, 595.) By parity of reasoning, it would seem it would have no jurisdiction over trusts not derived from the will; and this view is confirmed by considering the purpose of the proceeding under section 1664 of the Code of Civil Procedure, which is to determine the parties to whom the estate is to be distributed. It is therefore subsidiary to the proceeding for distribution, and the jurisdiction of the court in the two cases is co-extensive. Hence, if, in the matter of distribution, its jurisdiction does not extend to the determination or administration of trusts, other than those above specified, neither does it in the proceeding under section 1664 of the Code of Civil Procedure. In either case, therefore, it would seem its jurisdiction is merely to determine "the persons entitled under the will or by succession, or their grantees" (*Estate of Crooks*, 125 Cal. 461; *Estate of Burdick*, 112 Cal. 392, 393); and in neither case are the equitable claims of parties against the heirs or assignees of heirs a proper subject for its consideration. And this is in accord with the language of the act in declaring the effect of the judgment in the latter proceeding, which is, that it "shall be final and conclusive in the distribution of said estate, and in regard to the title to all property of the estate," or in other words, it "is conclusive only as to the succession or testamentary rights." (*Estate of Burdick*, 112 Cal. 392, 393.)

It is, however, not necessary to determine finally this question. Assuming the court to have jurisdiction, its judgment would be conclusive only as to the matter actually litigated. (*Olivas* v. *Olivas*, 61 Cal. 387; *Chever* v. *Ching Hong Poy*, 82 Cal. 71; *Estate of Vaughn*, 92 Cal. 193; *William Hill Co.* v.

---

[1] 49 Am. St. Rep. 97, and note.     [2] 63 Am. St. Rep. 145.

*Lawlor*, 116 Cal. 363; *Estate of Crooks*, 125 Cal. 462; Code Civ. Proc., sec. 1908.) In the case at bar the matter now involved was not before the court. The judgment was entered on the written order or stipulation of Wallace More, obtained along with the deed of April 27, 1894, and tainted with the same fraud. It added nothing to the force of that document and the accompanying deed. Hence it is immaterial whether the court had or had not jurisdiction to determine the questions now under consideration. It is sufficient that those questions were not submitted to it.

I advise that the judgment be affirmed.

Gray, C., and Chipman, C., concurred.

For the reasons given in the foregoing opinion the superior court is directed to designate in its judgment a reasonable time within which the payment of the money therein directed shall be made, and the note returned, and the conveyances executed, and thereupon its judgment shall stand affirmed. The costs of this appeal to be borne by the appellants.

Garoutte, J., Van Dyke, J., Harrison, J.

Hearing in Bank denied.