[L. A. No. 3099.  Department Two.—December 10, 1913.]

## W. L. WILLS, Appellant, v. M. F. WILLS, LOUISE E. M. BRAINERD, and LOUISE E. M. BRAINERD, as Executrix of the Last Will of Charlotte L. Wills, Deceased, Respondents.

ESTATE OF DECEASED PERSON—CONCLUSIVE EFFECT OF DECREE OF DISTRIBUTION—TRUST UNDER WILL.—In the absence of the incorporation in a decree of distribution, by apt language, of the provisions of the will, a decree unconditionally distributing property of the estate of a testator to a named distributee is a conclusive determination against the existence of any trust therein in favor of a third person. under the will.  The law of the state of Minnesota in this respect is presumed to be the same as the law of California.

ID.—FINDING AGAINST EXISTENCE OF TRUST.—The evidence is held to sustain the findings to the effect that certain conveyances of real estate made by a mother to her daughter were absolute, and were free from any trust in favor of the plaintiff, who was a son of the grantor.

APPEAL from a judgment of the Superior Court of Los Angeles County, from an order refusing to vacate the judgment, and from an order refusing a new trial.  Curtis D. Wilbur, Judge.

The facts are stated in the opinion of the court.

McNutt & Hannon, J. E. Hannon, George H. Smith, and O'Melveny, Stevens & Millikin, for Appellant.

J. W. McKinley, W. R. Millar, John D. Pope, and Flint, Gray & Barker, for Respondents.

HENSHAW, J.—Plaintiff sued his sister, the defendant Madeline F. Wills, and Louise E. M. Brainerd, personally and

as executrix of the last will of his mother, Charlotte L. Wills, deceased, seeking to establish a trust in certain properties, title to which is admittedly in these defendants. The court gave judgment against him, which judgment he moved to vacate. He also moved for a new trial. Both motions were denied, and he has appealed from the judgment and from the orders so denying his motions.

The complaint charged in several counts. The first set up the will of John A. Wills, father of plaintiff and defendant M. F. Wills, and alleged that by the terms of this will an express trust was created in favor of plaintiff in and to one-half of the property left by the father. So far as affects the matters here in controversy it is sufficient to say that John A. Wills left as heirs-at-law his widow Charlotte and the two children, plaintiff and defendant herein. After certain legacies, he gave and devised to his wife "all the rest and residue of my estate, both real and personal and mixed, in whatever it may consist, and wherever situated at the time of my decease." By succeeding paragraphs he voiced his "desire and request" that his wife "make liberal provision out of the said property during her lifetime for our son William and our daughter Madeline" and further "desired and requested" her to leave "so much of the property as shall remain in her hands unexpended to our said son and daughter." He also "desired and requested" his wife "not to dispose of the undeveloped and unproductive property in Duluth, in the state of Minnesota, so long as there shall be a reasonable prospect of additional increase in the value thereof." And finally in paragraph 12 he declares as follows: "In making the above requests of my said wife, I desire it to be fully understood that she shall have full power to dispose of the property above bequeathed and devised to her; either for the purposes aforesaid, or for any of them, or for any other purpose, and for her use and benefit, or otherwise, as she may think proper, it being my intention to vest in her the title and use of the property devised and bequeathed to her, subject to no condition, except that she shall, by will or otherwise, leave whatever may remain of said property in her hands, at the time of her death, to our said children, or their issue. And also, that she shall, during her lifetime make a reasonable provision for our said children or their

issue, as aforesaid." Upon this language appellant contends that there was created not a mere precatory trust, but an express and definite testamentary trust. But we are relieved from the necessity of, and, indeed, denied the power to consider this question by force of the following facts. Testamentary proceedings were had in the matter of the will and estate of John A. Wills, deceased. His son, plaintiff herein, was an executor of that will. Under these proceedings decrees of distribution were entered in the probate courts both of California and Minnesota. These decrees covered all of the property of John A. Wills, deceased. The attorneys representing plaintiff, executor in these proceedings, were the same attorneys who drew the will. The plaintiff executor and his coexecutor in their petition for distribution prayed that "the estate remaining in the hands of your petitioners as aforesaid may be distributed to the said party entitled thereto as aforesaid, to wit, the whole thereof, to the said Charlotte L. Wills." The decree of distribution "adjudged and decreed that the residue of the said estate hereinafter particularly described, and other property not now known or discovered, which may belong to the said estate or in which the said estate may have an interest, be and the same is hereby distributed as follows: the whole thereof to Charlotte L. Wills." In the probate court of the county of St. Louis, state of Minnesota, the decree of distribution there found and declared: "That said John A. Wills left a last will and testament, by the terms of which said will all of said real estate is devised to Charlotte L. Wills, widow of said deceased, in fee. Wherefore it is ordered and adjudged that the real estate aforesaid be and the same is hereby assigned to said Charlotte L. Wills, widow of said deceased, in fee simple." These decrees stand unassailed, and they are conclusive determinations against the existence of any trust in favor of plaintiff under the will of his father. (*William Hill Co.* v. *Lawler*, 116 Cal. 359, [48 Pac. 323]; *Goad* v. *Montgomery*, 119 Cal. 552, [63 Am. St. Rep. 145, 51 Pac. 681]; *Estate of Trescony*, 119 Cal. 568, [57 Pac. 951]; *Williams* v. *Marx*, 124 Cal. 22, [56 Pac. 603]; *More* v. *More*, 133 Cal. 494, [65 Pac. 1044, 66 Pac. 76]; *Martinovich* v. *Marsicano*, 137 Cal. 354, [70 Pac. 459]; *Keating* v. *Smith*, 154 Cal. 186, [97 Pac. 300].) It will not do to argue, as is here done, that because the property must have

been distributed to the widow in any and in all events, resort may be had to the will, from which it will be discovered that it was distributed to her as trustee under a trust. Only where by apt language the will is incorporated into the decree, as in *Goldtree* v. *Thompson,* 79 Cal. 613, [22 Pac. 50], may this be done. (*Goad* v. *Montgomery,* 119 Cal. 552, [63 Am. St. Rep. 145, 51 Pac. 681).] In all other cases the decree speaks for itself alone, without the aid of the evidence upon which it was based, and the will itself is only such evidence. "The decree supersedes the will and prevails over any provision therein which may be thought inconsistent with the decree." (*Goad* v. *Montgomery,* 119 Cal. 552, [63 Am. St. Rep. 145, 51 Pac. 681].) "Where a trust has been created by will the validity of the trust is necessarily involved in the question of distribution, for if invalid the bequest fails. (*Estate of Walkerly,* 108 Cal. 660, [49 Am. St. Rep. 971, 41 Pac. 772].) Hence, as necessary to distribution, it is within the province of the probate court to define the rights of all who have legally or equitably any interest in the property of the estate derived from the will." (*More* v. *More,* 133 Cal. 494, [65 Pac. 1044, 66 Pac. 76].) "The decree was necessarily a judicial construction of the will and of the several interests of the distributees, and cannot be assailed collaterally. There is no doubt or uncertainty in the decree itself as to plaintiff's title, and to that alone we are permitted to look." (*Williams* v. *Marx,* 124 Cal. 22, [56 Pac. 603].)

It is, of course, a legal presumption that the law of Minnesota in this respect is the same as our own. But it is not necessary even to rest upon this legal presumption, for in fact such is the Minnesota law. (*Greenwood* v. *Murray,* 26 Minn. 259, [2 N. W. 945]; *Bengtsson* v. *Johnson,* 75 Minn. 321, [78 N. W. 3]; *Ladd* v. *Weiskopf,* 62 Minn. 29, [69 L. R. A. 785, 64 Pac. 99].)

The next contention of appellant embraced in the second count of his complaint amounts to a twofold charge against the defendant, his sister. The charge is this, that the sister played upon the mother's fears, inducing her to believe that through business incompetence and extravagance the son would wreck the family fortune, and by force of these fears and the exertion of undue influence induced the mother to deed to the daughter different parcels of real estate of great

value. But the daughter represented that she would hold these lands under a trust to devote one-half of the income and in time convey one-half of the fee to the son and brother; that under these representations and with this understanding the mother so conveyed the property and the daughter since the death of the mother has repudiated the trust.

These conveyances were made by the mother to the daughter at different times and under differing circumstances. But before taking up the consideration of the titles to the separate parcels, a word may be said of the family relationship. John A. Wills died in November, 1891. The son and the daughter continued to live with their mother for some thirteen years, when the son married and left the maternal home. During that time he engaged in certain business ventures which were not prosperous, and because of which the women of the household feared action upon the part of his creditors which might prove disastrous to their financial interests.

The first of these parcels was known as the Spring Street lot. In 1895 Mrs. Wills conveyed the lot to her daughter. Miss Wills held possession of the property, paid all taxes upon it continuously ever since, and the court found that she had a good prescriptive title to it. The notary who took Mrs. Wills's acknowledgment to the deed testified that at the time of executing it she declared that she was conveying the property to her daughter for the purpose of insuring the daughter an income. Mrs. Wade, sister of Mrs. Wills, testified in reference to one of the wills Mrs. Wills had made (she made a number during the years of her widowhood which were admitted in evidence) that she said to her sister, "you don't say anything at all about the Spring Street property in your will," to which the sister replied, "No, because I have had nothing to do with it for a number of years. It belongs to Fannie." (Fannie being Madeline F. Wills, defendant herein.) In February, 1904, plaintiff wrote to his mother that "fully realizing the Spring Street lot was your own property and that you had a right to deed it to my sister, I hereby relinquish all right in that property and freely unite with you in the gift, so that she may always be provided for." The finding of title in Miss Wills without any trust is thus fully supported.

The second parcel consists of what is known as the home place, which was conveyed by Mrs. Wills to her daughter on April 30, 1895, "to be held in trust by the said Madeline Frances Wills for my children, William LeMoyne Wills and said Madeline Frances Wills, in equal undivided ownership and interest." In 1903 the son and daughter united in conveying the property back to Mrs. Wills, and on the same day Mrs. Wills again conveyed the property to her daughter. This reconveyance seems to have been made in view of the financial difficulties in which plaintiff had become involved, plaintiff testifying that there was "some talk about my being sued for a deficiency judgment and my mother wanted to put the house out of the way, my interest in the house out of the way of a suit against me so that my sister and I, on Mr. Winder's advice, conveyed the home place back to my mother." There was a sharp conflict in evidence about the continuation of the trust under the reconveyance back to the sister, the sister denying that the home place was re-deeded to her upon any trust, the plaintiff asserting that it was upon the same trust, resting in parol. Under this conflict the court found that the mother "gave said property absolutely and in fee simple to defendant, Madeline F. Wills, and said Madeline F. Wills is the owner thereof in her own right, free from any trust in favor of plaintiff." This finding, under the evidence, cannot here be disturbed.

The third parcel of land is real estate in the city of Los Angeles, title to which is in defendant Miss Wills and defendant Mrs. Brainerd, as tenants in common. Previous to the acquisition by Miss Wills of this Los Angeles property her mother had conveyed to her certain real estate in Duluth, Minnesota. Some of this Duluth property consisted of lots, title to which was derived by Mrs. Wills through the decree of distribution in her husband's estate, but far the more valuable portion of which she had herself owned since 1875. Miss Wills sold all of this property, receiving therefrom the sum of forty-seven thousand dollars, twenty thousand dollars of which she invested with Mrs. Brainerd in the Los Angeles property, their interests being equal. Plaintiff's contention is that all of the Duluth property belonged to his father's estate, came to his mother charged with the testamentary trust which we have before considered, and was conveyed by his

mother to his sister upon a like trust in his favor. Miss
Wills's testimony is in direct opposition to this, and one of
the wills of Mrs. Wills, dated shortly after the sale of the
Duluth property, and the acquisition by her daughter of the
Los Angeles property, declares as to the latter ''the one-half
of said property held in the name of my said daughter is her
sole and separate property, and I hereby confirm the title
thereto in her.'' The court found that no trust in favor of
the plaintiff attached to this property, and again it is to be
repeated that under the condition of the evidence this finding
may not here be disturbed.

The fourth parcel of real estate consists of a number of lots
in the city of Los Angeles, which for convenience may be
called the ''Montana tract.'' These lots were owned by the
plaintiff in January, 1904, when he conveyed them to his
sister, to be held in trust for his use and benefit. In March,
1904, with his consent, she conveyed the property to the
defendant Brainerd ''to be held upon the same uses and
trusts.'' Mrs. Brainerd held the property, paying street as-
sessments and taxes upon it, until December, 1905, at which
time she agreed to purchase the lots from plaintiff ''for the
sum of $50,000, to be paid in part by her satisfying or as-
suming the indebtedness of the plaintiff, estimated not to
exceed $30,000, and the balance in money, of which she paid
$1,000 to plaintiff in cash, and executed her note to him
for the sum of $19,000 to be paid without interest in monthly
installments of three hundred dollars.'' Plaintiff alleged that
this deed to Mrs. Brainerd was made without any considera-
tion, and he alleges that it was taken by Mrs. Brainerd, though
without his knowledge, as ''partner of the firm of Brainerd &
Wills'' (Wills being his sister). Elsewhere, however, he
makes the inconsistent allegation that ''to induce the accept-
ance of this proposition the defendant Brainerd represented
to plaintiff that she proposed to associate defendant Wills
with her in the ownership of the property, so that the same
would then become the property of the Wills–Brainerd part-
nership. . . . In this transaction the dealings of the plaintiff
were with the defendant Brainerd, but in fact the plaintiff
is informed and believes, and upon such information and be-
lief alleges that defendant Brainerd acted in the transaction
for herself and the defendant Wills, partners, as aforesaid,

and that defendant Wills authorized her action in said transaction and the representations made by her, and inducements held out by her to enter into the same." To this the joint answer of defendant Wills and Brainerd asserted that the defendant Wills, at the request of defendant Brainerd, agreed with her "when she purchased said property that she would on request of defendant Brainerd take a half interest therein, and she has since been requested by defendant Brainerd to take such interest and has done so." Plaintiff further alleges as the foundation for his grievance in this transaction that the estimate of the indebtedness was largely in excess of the fact; that no more than six or seven thousand dollars of his indebtedness has in fact been paid by the defendants, and that the defendant Brainerd further represented to him that his sister, in taking the one-half interest in the property, would hold a moiety of that interest in trust for him. And while these representations were made by defendant Brainerd and not by his sister, he alleges, upon information and belief, that they were authorized by his sister so to be made.

The evidence discloses that the list of debts was furnished to Mrs. Brainerd by the plaintiff and the debts so declared by plaintiff aggregated $25,750. Plaintiff was paid one thousand dollars in cash and received Mrs. Brainerd's note for nineteen thousand dollars, and he has received still further of the cash consideration over fifteen thousand dollars, and up to the time of the judgment he had demanded and received twenty monthly installments of the purchase money under his contract and he has been relieved of his debts. It is not readily to be perceived the grounds upon which, under this state of facts so found by the court, the plaintiff can contend, as he does, that he was defrauded, or that a trust in his favor arose from his sister's acquisition of one-half of the title. The contention of fraud is discredited by the findings, as is also the trust. It would appear, however, that the trust contended for is that which runs throughout the case as appellant argues it, —namely, that all of the property which the mother conveyed to the daughter was under the trust, and that the daughter in paying some of his debts, as she did, was but giving him what was his own, and that in buying an interest in this property, as she did, she was buying equally for his use and benefit. But the court finds against the existence of such a trust, and

without this foundation all of the superstructure of appellant's argument falls to the ground.

It would be vain to follow in detail appellant's argument and analysis of the evidence bearing upon this trust. Eliminating, as must be eliminated, the asserted trust in the will of the husband, it amounts to this: that Mrs. Wills was a kind and loving mother, equally devoted to the welfare of both children; that she was greatly and properly impressed by the charges and injunctions in her husband's will; that it is certain that such a mother would treat both children alike; that in the earlier wills which she made were dispositions of her property showing that she designed to treat them equally. There are the declarations of the plaintiff that his mother so told him, and from these and like facts and circumstances it is declared that an "irresistible presumption arises that the daughter took and held all these properties upon this trust." The answering evidence and the findings of the court have been mentioned. It would seem plain that whatever was the original intention of the mother, she had changed her mind about an equal division of the property, and in view perhaps of the fact her son was a physician in good practice, or for some other reason to her mind sufficient, she made these gifts and conveyances to her daughter, as she had the legal right to do. Mrs. Wills died in 1908. By her last will which was admitted to probate, which will was dated in 1904, she left the property of her estate to her daughter, requiring her to pay to the plaintiff the monthly sum of one hundred dollars during his lifetime, provided he did not contest the will. It appears in evidence that plaintiff's business ventures were unwise, extravagant, and unprofitable. While he testifies that he always had a good practice and a fair income, he apparently did not confine his activities to his profession of medicine. Without means other than such as he could secure from his mother, he was constantly in debt, and she and his sister constantly were called upon to pay his debts. During all his business career the mother had witnessed a succession of business extravagances and failures. She so writes to him in 1902. His debts at that time or his liabilities apparently amounted to at least fifty thousand dollars. The conduct of the mother, therefore, under the circumstances, was not unnatural and certainly was within her legal right.

It was stated upon oral argument that subsequent to the taking of this appeal a settlement had been made between the plaintiff and the defendant Brainerd disposing of all questions affecting the Montana tract and upon this statement this court was asked to reverse the case so far as the findings and judgment affected the Montana tract. This motion, thus informally made, was based upon the statement of a settlement the nature of which was not disclosed to the court and upon the assertion that the defendant Wills was not a party interested in or affected by the findings and judgment relating to the Montana tract. But the allegation of plaintiff's complaint charged her with being a half owner in the tract; the answer of defendant Wills admitted this ownership; there was no issue over that phase of the case, the issues therein being that she held this ownership in trust, and we can perceive no reason why the motion, thus made at oral argument should be granted, and it is therefore denied.

What has heretofore been said concerning the asserted trust applies with equal force to other minor gifts made by the mother to the daughter. It would be unprofitable to pursue the discussion further.

For the foregoing reasons the judgment and orders appealed from are affirmed.

Sloss, J., and Angellotti, J., concurred.

Hearing in Bank denied.