[No. H003227. Sixth Dist. May 30, 1989.]

Estate of LEO HEIL, Deceased.
AMERICAN HORSE PROTECTION ASSOCIATION, INC., et al.,
Plaintiffs and Appellants, v.
THE STATE OF NEVADA, as Trustee, etc., Defendant and
Respondent.

[No. H002589. Sixth Dist. May 30, 1989.]

AMERICAN HORSE PROTECTION ASSOCIATION, INC., et al.,
Plaintiffs and Appellants, v.
THE STATE OF NEVADA, as Trustee, etc., Defendant and
Respondent.

1504

COUNSEL

W. Robert Morgan, Morgan & Towery, Russell J. Gaspar and Hanna, Gaspar, Osborne & Birkel for Plaintiffs and Appellants.

Brian McKay, Attorney General (State of Nevada), P. Gregory Giordano and Brian Chally, Deputy Attorneys General, for Defendant and Respondent.

OPINION

COTTLE, J.—American Horse Protection Association, Inc. and Nevada Federation of Animal Protection Organizations (hereafter collectively AHPA) sought to remove the State of Nevada as trustee of a testamentary trust allegedly created by the holographic will of a California resident. After Nevada successfully moved to quash service of summons in the trial court, AHPA filed a virtually identical action in the original probate proceeding. The probate court also granted Nevada's motion to quash. Both courts premised their rulings on a determination that the final decree of distribution did not create a charitable trust. We disagree. The language of the will and of the final decree of distribution created a trust over which the probate courts of this state have continuing jurisdiction. Accordingly, we reverse the judgment of dismissal in both actions.

BACKGROUND

Nineteen days before his death on August 26, 1972, Leo Heil, "of Reno, Washoe County, Nevada," executed a holographic will consisting of five paragraphs. In the first paragraph, he directed that his just debts and his last illness/funeral expenses be paid. In the second paragraph, he appointed James L. Bargas to serve as executor. In the third paragraph, he provided that none of his relatives, whom he named, should share in his estate. In paragraph IV, Heil stated: "I desire that twenty thousand dollars of the estate be given as a gift to Mr and Mrs Jame [*sic*] L and Judith A Bargas for invaluable services rendered." And in the final paragraph, he directed that the residue of his estate be "given to the State of Nevada for the preservation of the wild horses in Nevada." Heil died in Sunnyvale, California, and his holographic will was admitted to probate in the Santa Clara County Superior Court on November 1, 1972.

On February 27, 1973, Heil's heirs at law filed a petition to revoke probate of the will. Both Bargas, the executor of the estate, and the State of

Nevada answered the petition. Nevada subsequently served and answered interrogatories, attended the taking of depositions, filed a motion in opposition to removing the matter from the trial calendar, and participated in a compromise and settlement of the action.

In January 1976, an interim order settling first account was entered in the probate court. Pursuant to that order, Nevada received $95,000 from the sale of property Heil owned in Kentucky. Nevada received a further distribution pursuant to the court's April 9, 1979, order settling second and final account. The pertinent paragraph of that order provided: "The estate in the possession of the executor remaining for distribution consists of approximately $226,637.79 cash which should be distributed to the State of Nevada for the preservation of the wild horses, pursuant to paragraph V of decedent's Will admitted to probate herein."

Nevada maintained the funds from the Heil estate in a separately designated account between 1974 and 1985. By the time the instant litigation was filed, the fund had appreciated in value to in excess of $1 million. In 1985, the Nevada Legislature enacted a bill establishing a "commission for the preservation of wild horses" (Nev. Rev. Stat. § 504.440) and creating a trust fund consisting of "the Heil bequest and all money received to preserve wild horses from any other source . . . ." (Nev. Rev. Stat. § 504.450.) The trustees of the fund are the three members of the commission for the preservation of wild horses. (Nev. Rev. Stat. § 504.450, subd. 3.)

On May 5, 1986, AHPA filed a complaint in the Santa Clara County Superior Court (action No. 601675) to remove Nevada as trustee of the Heil bequest on the ground that Nevada had undertaken acts hostile to the preservation of wild horses in Nevada.[1]

Nevada moved to quash on minimum contacts-due process grounds and on the basis of forum non conveniens. At the hearing on Nevada's motion, the trial court requested supplemental briefing on the issue of whether the language in Leo Heil's will created a trust at all. After further briefing and

---

[1] The alleged acts included filing suit in 1979 against the United States to compel the removal of all but 10,000 wild horses from public lands within Nevada; enacting legislation calling on the Congress to reduce the wild horse population; denying requests by the United States to permit wild horses to use watering facilities located on state lands; and authorizing officials of the state to testify, in legal actions brought by others, in support of efforts to remove wild horses from federal public lands. AHPA also argued that the Nevada legislation creating the commission for the preservation of wild horses was hostile to wild horse preservation. Specifically, the legislation calls for one of the three commission members to be a rancher, a class AHPA states is "traditionally hostile to the preservation of wild horses," and it requires the commission to promote "management" of the animals over "protection" of them.

oral argument, the court granted Nevada's motion to quash. The court ruled that the language in Heil's will was precatory and that because the final order of distribution of Heil's estate did not expressly make reference to a trust, no trust was created. Therefore, Nevada took the estate assets free of trust, and the California courts were without jurisdiction to decide the case. AHPA moved to reconsider, but the court declined to modify its order.

AHPA then filed a petition in the original probate proceeding (action No. 83290) to remove Nevada as the trustee. The state again moved to quash. On May 5, 1987, the court filed a memorandum of decision granting the motion to quash on the grounds that the probate court's final order of distribution "never specifically decreed that a trust existed." AHPA appeals from each of the two orders. We directed that the two appeals be consolidated.

## DISCUSSION

*A. Did the decree of distribution create a charitable trust or was the residue of Leo Heil's estate given to the State of Nevada in fee?*

The "threshold question," the trial court properly observed in its May 5, 1987, memorandum of decision, "is whether a testamentary trust was established in this Probate Court's 1979 Decree [of Final Distribution]." ■ This is because the final decree controls the effect of a decedent's will. "A decree of distribution is a judicial construction of the will arrived at by the court ascertaining the intent of testator. [Citations.] Once final, the decree supersedes the will [citations] and becomes the conclusive determination of the validity, meaning and effect of the will, the trusts created therein and the rights of all parties thereunder. [Citations.] . . . [¶] . . . It is well settled that 'where the decree of distribution is contrary to the provisions of the will, the decree controls and prevails over the terms of the will with respect to the distribution of the property.' [Citations.]" (*Estate of Callnon* (1969) 70 Cal.2d 150, 156-157 [74 Cal.Rptr. 250, 449 P.2d 186], fn. omitted.)

An exception to this rule exists, however, in cases where the will is incorporated by reference into the decree. In that case, resort to the will may be had. (*Estate of Lockhart* (1937) 21 Cal.App.2d 574, 578 [69 P.2d 1001].) A second exception exists where the decree itself is uncertain or ambiguous. (*Estate of Callnon, supra,* 70 Cal.2d at p. 157.) ■ In the present case, both exceptions apply.

The probate court's order incorporated the will by reference into its final decree.[2] Additionally, the provision distributing the residuary estate to the State of Nevada was uncertain.[3] Paragraph 10 did not specify that the residual estate was to be distributed to Nevada in fee; nor did it specify that a trust was created. In these circumstances, the will may be used to establish the meaning and intent of the decree.

The reliance of Nevada and the trial and probate courts on *Wills* v. *Wills* (1913) 166 Cal. 529 [137 P. 249] is misplaced. In *Wills,* the testator's will was not incorporated into either of the two final decrees of distribution, and the meaning of each decree was clear and unambiguous. In that case, John A. Wills devised the residue of his estate to his wife. In succeeding paragraphs of his will, he voiced his " 'desire and request' " that his wife " 'make liberal provision out of the said property during her lifetime for our son William and our daughter Madeline' " and that she leave " 'so much of the property as shall remain in her hands unexpended to our said son and daughter.' " Wills also " 'desired' " that his wife " 'by will or otherwise, leave whatever may remain of said property in her hands, at the time of her death, to our said children, or their issue. . . .' " (*Id.,* at p. 530.)

Subsequently, the wife died and left most of the property to her daughter. The son sued his sister alleging that by the terms of their father's will, an express trust was created in his favor to one-half of the property. The court entered judgment against him on the ground that the final decrees of distribution did not create any trusts. The court observed that the son had served as executor in both the California and the Minnesota probate proceedings. The California final decree of distribution " 'adjudged and decreed that the residue of the said estate hereinafter particularly described, and other property not now known or discovered, which may belong to the said estate or in which the said estate may have an interest, be and the same is hereby distributed as follows: the whole thereof to Charlotte L. Wills.' " (166 Cal. at p. 531.) The Minnesota decree provided: " 'That said John A. Wills left a last will and testament, by the terms of which said will all of said real estate is devised to Charlotte L. Wills, widow of said deceased, in fee. Wherefore it is ordered and adjudged that the real estate aforesaid be and the same is hereby assigned to said Charlotte L. Wills, widow of said deceased, in fee simple.' " (*Ibid.*)

In *Wills,* the court observed, "It will not do to argue, as is here done, that because the property must have been distributed to the widow in any and all

---

[2] As noted above, paragraph 10 of the court's order provided: "The estate in the possession of the executor remaining for distribution consists of approximately $226,637.79 cash *which should be distributed to the State of Nevada for the preservation of the wild horses, pursuant to paragraph V of the decedent's Will* admitted to probate herein." (Italics added.)

[3] The trial court recognized this uncertainty when it observed, "It seems to me that it is not clear to me that a trust was created by the order of the probate court."

events, resort may be had to the will, from which it will be discovered that it was distributed to her as trustee under a trust. *Only where by apt language the will is incorporated into the decree,* as in [citation], *may this be done.* [Citation.] In all other cases the decree speaks for itself alone . . . ." (166 Cal. at pp. 531-532, italics added.)

In the present case, in contrast, we may look to Leo Heil's will to determine whether a trust in favor of wild horses in Nevada was created because of the incorporation of the will into the decree and because of the decree's ambiguity. ■ The applicable rules of construction with respect to charitable trusts are well settled. A charitable trust is created in the same manner as a private trust. (Rest.2d Trusts, § 349, com. a.) First, the settlor must manifest an intent to create a charitable trust. (Prob. Code, § 15201.)[4] Second, there must be trust property or res (§ 15202) of such nature as to be the proper subject of a trust. Third, there must be a beneficiary or *cestui que trust* (§ 15205). In the case of a charitable trust, however, there will not be specific, ascertained beneficiaries. (§ 15205, subd. (a); 7 Witkin, Summary of Cal. Law (8th ed. 1974) Trusts, § 38.) Rather, the trust property is devoted to the accomplishment of purposes beneficial to the community. ■ Recognized charitable purposes include relief of poverty, advancement of education, advancement of religion, protection of health, governmental or municipal purposes and the promotion of other purposes beneficial to the community. (Rest.2d Trusts, §§ 368-374.) Comment c to section 374 of the Restatement Second of Trusts provides in pertinent part: "A trust to prevent or alleviate the suffering of animals is charitable. Thus, a trust for the prevention of cruelty to animals, or a trust to establish a home for animals, or a trust for the prevention or cure or treatment of diseases or of injuries to animals, is charitable."

■ In the case at bar, Leo Heil manifested an intent to create a charitable trust in favor of wild horses in Nevada. Toward this purpose, he left the residue of his estate. These are all the elements necessary to the creation of a charitable trust. ■ "It is the policy of the law to favor gifts for charitable purposes, and a will providing such gifts will be liberally construed in order to accomplish the intent of the donor." (*Estate of Tarrant* (1951) 38 Cal.2d 42, 46 [237 P.2d 505, 28 A.L.R.2d 419].) As the court declared in *Estate of Moore* (1961) 190 Cal.App.2d 833 at 839 [12 Cal.Rptr. 436], "[I]n approaching the doorway of the testator's mind through the words of her bequest, courts do not now adopt an antagonistic spirit toward her charitable intent for it is the rule that where doubt exists, a gift must be interpreted in favor of a charity. [Citations.]"

---

[4] Unless otherwise indicated, all further statutory references are to the Probate Code.

Liberally construing the trust instrument in the instant case, there can be no doubt that Leo Heil intended that a trust be impressed on the residue of his estate for the benefit of wild horses in Nevada. The words he chose manifest an intent to impose an imperative obligation upon Nevada. (Cf. *Estate of Duncan* (1956) 145 Cal.App.2d 612 [302 P.2d 892].) Significantly, the paragraph of Heil's will disposing of the residue of his estate contains no words of entreaty, request, wish or recommendation, which constitute the essence of a precatory statement. (See Bogert, Trusts and Trustees (1984) § 48, pp. 72-95.)[5]

Because we conclude that a charitable trust was created by the will and final decree of distribution, we do not reach AHPA's second and third contentions, i.e., that Nevada is estopped from denying the existence of a trust by virtue of its previous activities, and that the Inheritance Tax Referee's determination that the residual estate was exempt from inheritance tax as a charitable bequest should be binding on this court.

### B. *Jurisdiction*

When Leo Heil executed his holographic will in 1972, section 1120 provided as follows: "[W]hen a trust created by a will continues after distribution, the superior court shall not lose jurisdiction of the estate by final distribution, but shall retain jurisdiction for the purpose of determining to whom the property shall pass and be delivered upon final or partial termination of the trust, to the extent that such determination is not concluded by the decree of distribution, of settling the accounts and passing upon the acts of the trustee . . . ."

Under this statute, courts held that the probate court had jurisdiction over "practically all controversies which might arise between the trustees and those claiming to be beneficiaries under the trust." (*Estate of Smith* (1935) 4 Cal.App.2d 548, 552 [41 P.2d 565].)

In 1977, the continuing jurisdiction of the probate court over testamentary trusts was prospectively limited with respect to trusts created by wills executed on or after July 1, 1977. (See Stats. 1976, ch. 860, p. 1969, adding subd. (c) to § 1120.) Section 1120, subdivision (c) was repealed and replaced by section 1120, subdivision (a) in 1982 and the latter section was in 1987 repealed and superseded by section 17300. Section 17300 removes all trusts from the continuing jurisdiction of the court *except for* "[a] trust created by

---

[5] Compare the language in paragraph V (establishing the trust) with the clearly precatory language in paragraph IV (in which Heil "desire[d]" that his friends, the Bargases, receive $20,000 for invaluable services). The probate court, in its order settling second and final account, did not enforce paragraph IV although it did enforce paragraph V.

a will executed before July 1, 1977, and not incorporated by reference in a will on or after July 1, 1977" (subd. (a)) and a trust in which the testator specifically provided for the probate court's continuing jurisdiction (subd. (b)).

Section 17301 provides that the court retains jurisdiction over a trust described in section 17300 for any of the purposes specified in section 17200. One of the purposes specified in section 17200 is a proceeding to appoint or remove a trustee. (§ 17200, subd. (b)(10).)

Nevada contends that *Estate of Goddard* (1984) 157 Cal.App.3d 340 [203 Cal.Rptr. 623] stands for the proposition that the amendments to section 1120 must be applied retroactively to trusts created by will executed before July 1, 1977. *Goddard,* however, applied only to pre-July 1, 1977 trusts administered by an institutional trust company trustee. The case was consistent with former section 1120.1a, added in 1982 to impose notice and reporting requirements on trustees and to establish a procedure for removing trusts without institutional trustees from continuing jurisdiction.[6]

From the foregoing it is clear that the probate courts of this state retain jurisdiction over the testamentary trust created by the will Leo Heil executed in 1972. Nevada is not a trust company trustee and it has not petitioned the court to remove the trust from court jurisdiction.

█ Nor is Nevada's contention well taken that it has insufficient contacts with the State of California to make the exercise of personal jurisdiction reasonable. A party, even one who has no minimum contacts with this state, may consent to jurisdiction in a particular case. (See Rest.2d Conf. of Laws, § 32.) When a party takes part in an action or proceeding, for example, by pleading or participating in the trial, the party has made a general appearance and has consented to jurisdiction. (See Rest.2d Conf. of Laws, § 27, subd. (1)(f).) Nevada answered the petition in the probate proceeding and it actively participated in discovery and settlement of the action. It may not now object to the court's exercise of jurisdiction.

We do not reach the issue of whether the action should be transferred to the Nevada courts on the grounds of forum non conveniens. AHPA did not raise this as an issue on appeal and neither the trial nor the probate court ruled on that question.

Jurisdiction over Leo Heil's testamentary trust is properly before the probate court. Accordingly, we reverse the judgment of dismissal in the

---

[6] Section 1120.1a has been restated with some technical changes in section 17351.

original probate action, No. 83290, and remand the cause for further proceedings. We also reverse the judgment in No. 601675, with directions to the superior court to dismiss this duplicative action.

Agliano, P. J., and Elia, J., concurred.

Respondent's petition for review by the Supreme Court was denied August 16, 1989.