[Civ. No. 2339. Third Appellate District.—September 6, 1921.]

ALBERT HILTON, Appellant, v. CELIA E. HILTON, Respondent.

[1] DIVORCE—ADULTERY—EVIDENCE—BIRTH OF CHILD AFTER SEPARATION.—Where in an action for divorce on the ground of the wife's alleged adultery it appears as an uncontroverted fact that the parties have lived separate and apart for a period of four or five years, it is competent for the husband to prove either by his own testimony or that of other witnesses that although he has had no sexual relations with his wife during such period, she has conceived and given birth to a child within such time, notwithstanding the provisions of subdivision 5 of section 1962 of the Code of Civil Procedure, since the dominant purpose of such testimony is to support the charge of adultery.

[2] ID.—EXISTENCE OF SEXUAL RELATIONS AFTER SEPARATION—CONFLICT OF EVIDENCE—EXCLUSION OF ADMISSIONS BY WIFE—PREJUDICIAL ERROR.—In an action for divorce on the ground of the wife's alleged adultery, the exclusion of testimony offered by the plaintiff of alleged admissions by the defendant to a third party

that she and her husband had not lived together and had had nothing to do with each other for four or five years prior to the date of the birth of the child last born to her was reversible error, where plaintiff testified that he had not had sexual relations with her during said period and she, on the other hand, testified that he had frequently visited her and maintained such relations.

[3] ID.—PROPERTY SETTLEMENT—UNDUE INFLUENCE—SUFFICIENCY OF EVIDENCE.—In this action for divorce, the finding that the property settlement and deed made in pursuance thereof were procured by means of undue influence is sustained by the evidence.

[4] HUSBAND AND WIFE—TRANSFER OF PROPERTY—GOOD FAITH.—The relation between a husband and wife is of a confidential nature, and the law requires that in a transaction involving the transfer by the one to the other of property of value, the husband shall act in the highest good faith toward his wife to the end that he may not obtain any unfair or unconscientious advantage over her in such transaction.

[5] ID.—INDEPENDENT ADVISER—RIGHT OF WIFE.—In transactions involving the transfer of property between the husband and wife the latter should have the benefit of a full, free, and private preliminary conference with a competent lawyer or business man who was employed and paid by her in whom she has confidence and who would be devoted to her interest only.

[6] ID.—INADEQUACY OF CONSIDERATION—CIRCUMSTANCE OF FRAUD.—While it is true that the want of a valuable consideration for a contract or agreement between husband and wife involving a transfer of property by one to the other is not of itself sufficient to raise the presumption of fraud or undue influence in the procurement of the agreement, yet where there is a valuable consideration which, when viewed by the light of the confidential relation existing between the parties, is so small as to shock the conscience, the fact of the inadequacy of the consideration may be considered as a circumstance tending to support the claim that the consummation of the transaction has not been free from fraud or undue influence.

[7] ID.—RESCISSION OF PROPERTY SETTLEMENT AGREEMENT—RESTORATION OF CONSIDERATION — WHEN UNNECESSARY. — A wife in rescinding on the ground of undue influence an agreement settling property rights is not required to restore to the husband the money received under the agreement, where the same was used for the purpose of defraying the living expenses of herself and their minor children.

APPEAL from a judgment of the Superior Court of Tulare County. J. A. Allen, Judge. Reversed.

The facts are stated in the opinion of the court.

J. E. Greene for Appellant.

Middlecoff, Scott & Ham for Respondent.

HART, J.—The plaintiff brought this action to secure a
divorce from the defendant, and as grounds therefor
charged, as a first cause of action, that the defendant had,
on divers occasions, committed acts of cruelty upon and
toward him, and as a second cause of action, that she had
been guilty of adultery. As to the last charge, the
amended complaint alleges: That three children have been
born since said marriage, to wit: Laura Hilton, a daughter,
aged thirteen years; Edwin Hilton, a son, aged seven years,
and Clarence Hilton, aged about five months; "that
(Paragraph IV of second cause of action) plaintiff and
defendant separated in the County of Tulare, State of
California, in the month of September, 1914, and ever since
said time have continued to live separate and apart;
. . . that plaintiff is informed and believes, and upon such
information and belief alleges the fact to be true, that
defendant did, during the months of June, July and
August, 1918, on the ranch of the plaintiff, in the County
of Tulare, . . . , and on divers days and times between
said month of August, 1918, and the time of the com-
mencement of this action, commit adultery; that the name
of the man with whom said act was accomplished is unknown
to plaintiff; that the said child, Clarence Hilton, is not the
issue of the marriage of said plaintiff and defendant, but
is an illegitimate child of defendant and the man with
whom said acts of adultery were hereinbefore alleged to
have occurred."

It is further alleged that, on the fifteenth day of De-
cember, 1917, and prior to the commencement of this ac-
tion, the plaintiff and the defendant "entered into an
agreement settling their property status, a copy of which
agreement is hereunto attached and made a part of this
complaint," etc.

By the terms of the agreement referred to the de-
fendant agreed to execute and deliver to the plaintiff a
deed to about 100 acres of land, on which there were im-
provements—in fact, the home place of the parties, and
where they were residing at the time of the making of

the agreement—and all the appurtenances of said land, for and in consideration of the sum of $3,500, payable, $500 at the time of the execution of the agreement and $500 yearly thereafter until the full sum of $3,500 was paid, no interest chargeable or payable on deferred payments. The agreement provided: "Until said sum of $3,500.00 is paid in full, said second party [defendant] shall have the right to live in the dwelling house, where she now resides, on the land above described, without the payment of rent therefor, but upon the full payment of said sum of $3,500.00 she agrees that she will give possession and remove from said real property within thirty days after receiving notice so to do from said party of the first part, or his assigns." It was further covenanted that all the household furniture and the wearing apparel in said dwelling-house were to be the sole property of the wife and "all said real property, including farming implements and live stock is the sole and separate property of said party of the first part" (plaintiff).

The following further provisions were contained in said agreement:

"Said party of the second part is to have the exclusive custody and control of the two minor children of the parties hereto, Laura Hilton, now aged twelve years and Edwin Hilton, now aged six years, but said party of the first part is to have the right to visit said children at any and all reasonable times.

"The payment by said party of the first part to said party of the second part of the sum of Thirty-five Hundred ($3500.00) Dollars, as herein above provided shall be in full payment of every claim and demand of whatsoever kind or nature which said party of the second part now has or may hereafter claim against said party of the first part, including maintenance of herself, of the minor children above mentioned, and so long as said party of the first part shall make such payments as above specified, said party of the second part shall pay all of her own bills and expenses of every kind and nature and shall not incur or cause to be incurred any liability against the said party of the second part.".

The defendant's answer specifically denied each and every act of cruelty alleged against her in the complaint and de-

54 Cal. App.—10

nied the charge of adultery and that the said Clarence Hilton is her illegitimate son; denied that plaintiff "has not lived with the defendant or cohabited since the times alleged in Paragraph IV" of the second cause of action.

Defendant also filed a cross-complaint in which she charged and specifically set forth a series of acts of cruelty, occurring on divers occasions, on the part of the plaintiff toward and upon her. She further alleged in said affirmative pleading that she is, "and at all times mentioned herein was," the owner of the land described in the agreement between her and plaintiff whereby she agreed to quitclaim, by a deed of conveyance to the latter, her interest therein. In this connection, she charged that the plaintiff and cross-defendant, with the intent to defraud and deprive her of her right to be supported by said cross-defendant, persuaded her to execute the agreement mentioned; that said agreement was entered into by cross-plaintiff without consideration "and was obtained from this cross-plaintiff by said cross-defendant by undue influence, and the same is fraudulent and void as to this cross-plaintiff and the three children of plaintiff and defendant above named, and that said contract should be annulled; and this cross-plaintiff alleges that, on or about said fifteenth day of December, 1917, said cross-defendant, by the same means by which he obtained said agreement from said cross-plaintiff, and without any consideration received by this cross-plaintiff or parted with by said cross-defendant, obtained from this cross-plaintiff a quitclaim deed to said 100 acres of land, which said quitclaim deed this cross-plaintiff alleges was and is fraudulent and void as against this defendant and said minor children." It is further alleged by cross-complainant that, at the time she signed and so executed said agreement and said deed, she had no property of her own, nor any way of supporting herself other than by being supported by her said husband, "and these facts were known to plaintiff"; that, at said time, she had been married to plaintiff for more than eleven years and that at that time the sum of $500 was not sufficient to support said two children, then born and living, and cross-complainant; that when she executed said agreement and said deed she had no independent advice; that the negotiations leading to the execution by her of said instruments were

conducted by the family physician of the parties, and that she did not know at that time, or while said negotiations were pending and being so carried on, that she was entitled to independent advice, and was not informed of her right to such advice or of any of her rights; that since the execution of said instruments she has been compelled to borrow the sum of $150, "in order to supplement said $500 per year as aforesaid"; that "said family physician at said time was interested in said settlement provided by Exhibit 'A' [the agreement], in that he had been told by said plaintiff that if said physician would procure this cross-complainant to sign said paper, then said plaintiff would pay to said family physician an indebtedness due from said plaintiff to said family physician, consisting of several hundred dollars, but neither said physician nor plaintiff informed cross-complainant of such fact."

The prayer of the cross-complaint is: That the cross-plaintiff be granted a divorce; that the agreement and the quitclaim deed mentioned in the pleadings be annulled and set aside; that the custody of the minor children be awarded to cross-complainant and that there be an award of such alimony for the support of herself and children as the equities of the case might warrant.

The cross-complaint was met by specific denials in an answer thereto by plaintiff, both as to the allegations of cruelty and the charge in the cross-complaint that the agreement and the deed in question were obtained from cross-complainant by means of undue influence and fraud.

The court found that the allegations of cruelty in both the complaint and the cross-complaint were untrue and that the charge in the complaint that defendant had been guilty of adultery was not sustained by the evidence and that said charge was baseless. It was also found, in connection with the finding upon the charge of adultery against the defendant, that the plaintiff and defendant did not separate in the month of September, 1914, or any other time prior to April, 1919, "although said parties occupied two different and separate cottages located on the lands of the plaintiff described in the complaint, said cottages were only a few rods apart, and said parties continued marital relations until after the conception of said Clarence Hilton."

It was further found that the land described in the complaint and in the agreement referred to was, at the time of the execution of the latter instrument and the deed from defendant quitclaiming said property to plaintiff, of the value of $23,000, and contained a house which was the home of and was a suitable home for said plaintiff and defendant and their children, "and was then improved with productive vineyards and orchards; that, on said fifteenth day of December, 1917, said real property was encumbered with a mortgage for the sum of $11,000," the same still subsisting on said property at the time of the commencement of this action; "that at said time defendant was without means and was absolutely dependent upon said plaintiff for support and maintenance for herself and her said minor children; that since said time said real property has increased until at the time of this action it was of the value of $50,000 and the annual income therefrom was $4,800."

The court found that the agreement and the deed in question were procured from defendant by means of undue influence and were unsupported by a consideration, and that they were hence fraudulent and void as to the defendant and the minor children of the plaintiff and the defendant, and that the same should be annulled; that at the time of the execution of said instruments the defendant had no property of her own, and no way of supporting herself, but was solely dependent upon her husband (plaintiff) for support, all of which was then known to plaintiff; that, in the transaction resulting in the execution by her of the two instruments mentioned she was without independent advice, and was ignorant during the pendency of said transaction of her right to such advice therein, and was not informed of her rights in that particular. The court found, precisely as the cross-complaint alleges, that the negotiations culminating in the execution by her of the agreement and the deed in question were conducted by the family physician of the parties hereto and that said physician was personally interested in the success of said negotiations for the reasons set forth in the cross-complaint as hereinabove stated.

A decree was framed in accord with the findings upon all the vital issues of fact, awarding plaintiff the custody of

the minor child, Laura Hilton, and the defendant the custody of the minor children, Edwin Hilton and Clarence Hilton, and also a monthly allowance of $75 for the support of defendant and the minor children of the parties whose custody was awarded to her, and $175, to be paid by plaintiff to defendant, for the purpose of liquidating a loan made by the latter at a certain bank for the support of herself and children after the instruments in question were executed.

The appeal is from said decree.

The assignments of error are: 1. That error was committed in the rejection of certain testimony offered by the plaintiff in the support of the charge of adultery; 2. That the finding as to the date of the separation of the parties and the finding that the agreement in question and the deed, which was the culmination thereof, and whereby the defendant quitclaimed to plaintiff whatever interest she had in the land described in said instruments, were procured by means of undue influence, are without sufficient support in the evidence.

[1] 1. The assignment first above stated is important because the court found, as we have seen, that neither the allegations of cruelty as set forth in the complaint nor those of cruelty as pleaded in the cross-complaint were sustained by the proofs, thus leaving as a live issue (since there then remained in the case no defense by way of recrimination [Civ. Code, sec. 122]), the charge made by the plaintiff that the defendant had been guilty of acts of adultery. The said assignment arose from an effort by the plaintiff to prove by the witness, Freeman, that, in the presence of his wife and himself, on several different occasions within a few months subsequently to the date of the birth of the last child born to the defendant, the latter stated that she and the plaintiff had not lived together or had anything to do with each other "in four or five years." Objection was interposed to the proffered testimony on the ground that it was incompetent as in proof of the charge of adultery. After considerable argument of the point and counsel for plaintiff had named several other witnesses by whom (so he asserted) he could prove the same declaration by defendant, made within the same period of time, the objection was sustained. The theory upon which the ob-

jection was made by counsel for defendant and sustained by the court was that the testimony proposed would necessarily tend to prove the illegitimacy of the child, Clarence, the last born to defendant, thus contravening the established policy of the law against the bastardizing of issue born in wedlock upon the statements or declarations or testimony of the parents, or a man and woman living together or cohabiting ostensibly as husband and wife. The objection was based and sustained upon the provisions of subdivision 5 of section 1962 of the Code of Civil Procedure, viz.: "That the issue of a wife *cohabiting* with her husband, who is not impotent, is indisputably presumed to be legitimate." The theory of said rule is stated as follows by Jones on Evidence, volume 1, section 96: "It is well settled on grounds of public policy affecting the children born during the marriage, as well as the parties themselves, that the presumption of legitimacy as to children born in wedlock cannot be rebutted by the testimony of the husband or the wife to the effect that sexual intercourse has or has not taken place between them, nor are the declarations of the husband or wife competent as bearing on the question." (See, also, 2 Greenleaf on Evidence, sec. 1; *Estate of Mills,* 137 Cal. 298, 302, [92 Am. St. Rep. 195, 70 Pac. 91]; *Estate of Walker,* 180 Cal. 478, [181 Pac. 792]; *Estate of McNamara,* 181 Cal. 82, [7 A. L. R. 313, 183 Pac. 552].)

In the two cases last named the whole subject of the presumptions, both conclusive and disputable, applicable to the question of the legitimacy of issue born in wedlock is learnedly and exhaustively considered by Mr. Justice Olney; and it seems to have been the view of counsel for defendant, in objecting to, and that of the court, in excluding, the testimony referred to, that it is by those cases held that the presumption of the legitimacy of issue born in wedlock or during coverture is conclusive even where the husband and wife, although living separate and apart, have, within the period of probable conception and gestation, had opportunity only for coition between each other; that, therefore, evidence tending to establish the illegitimacy of such issue is wholly incompetent and inadmissible. The cases mentioned do not so hold. Those cases declare, as it was held in the Mills case, *supra,* that the

word "cohabiting," as used in subdivision 5 of section 1962 of the Code of Civil Procedure, "means the living together of a man and woman ostensibly as husband and wife (1 Bishop on Marriage, Divorce and Separation, sec. 1669, note 1)," and that where the parties are so living together the issue of the wife is indisputably presumed to be legitimate, but that, on the other hand, "it is always permitted to show that it was not possible by the laws of nature for the husband to be the father, as by showing impotency on his part, want of intercourse during the possible period of conception, or that the child is of a race or color such that it could not have been conceived by the husband." (*Estate of Walker,* 180 Cal. 491, [181 Pac. 797].) In the *Estate of Mills, supra,* however, the following language is used and it is probable that upon that language the counsel for defendant principally relies to support his position: "Illegitimacy may be proved; but it cannot be proved by the evidence of a husband or wife that, *while they were living together they did not have sexual intercourse.*" But this language, or the rule as thus stated, while perfectly consistent with the provision of subdivision 5 of section 1962 of the Code of Civil Procedure, as the word "cohabiting" as therein used is interpreted by the decisions, does not preclude or declare as incompetent the testimony of either the husband or wife, upon the issue of the legitimacy of a child born in wedlock, of nonintercourse, where they have not "cohabited" or *not* lived together at the time and during the period of conception and gestation.

The evidence very plainly discloses that the present case does not fall within the result reached in the Mills case. The testimony of both the plaintiff and the defendant was as one upon the proposition that they had not, for a number of years prior to the birth of the last child, Clarence, born to Mrs. Hilton, lived together in the same house or dwelling. The plaintiff stated that the period of time during which the separation between them had existed down to the date of the trial was between five and six years. The defendant, while candidly admitting that they had not lived together for a number of years, was not able to give the exact period during which they lived separate and apart; giving it as her opinion, however, that

it was three or four years. The evidence without conflict shows that, at some date several years before the birth of said child, the plaintiff left the dwelling in which he and defendant had been living together and took up his abode in a cabin on the same land on which the dwelling was situated and about one hundred yards distant from said dwelling, and there slept and had his meals, preparing them himself, for a period of several years prior to the date of the birth of the child; that during that period of time he never on any occasion slept or had a meal in said dwelling; that defendant during said period never had a meal or slept in the cabin so occupied by the plaintiff; that they often met but seldom if ever spoke to or exchanged greetings with each other. Besides this evidence, there is the agreement dated and presumably executed on the fifteenth day of December, 1917, whereby the defendant agreed for the consideration therein specified to relinquish to plaintiff all her right and title in and to the land described in said instrument and which contained, among other things, this recital: " . . . that the parties hereto are now and for several years last past have been living separate and apart, and it appearing that there is no reasonable prospect of their effecting a reconciliation and resuming the marital relation, . . . Now, therefore, it is mutually agreed," etc.

But the case at bar is wholly different from the cases above referred to. The issue submitted for decision was entirely different. In those cases the question of the legitimacy of the child was directly in issue; it was, indeed, the principal issue, and directly affected the status of the child with respect to an inheritance. Here the question or issue tendered by the pleadings is not whether the child last born to defendant was legitimate but whether the defendant had been, as charged in the complaint, guilty of having sexual relations with some person other than the plaintiff, her husband. In other words, as has been shown, the plaintiff sought a decree of divorce from the defendant on the ground, among others, that the latter had committed the marital offense of adultery, and he was entitled to prove his case precisely as any other issue of fact may be proved—that is to say, that he may prove it by any relevant fact or circumstance which he may in a competent

manner be able to present; and if, as is the theory of the plaintiff in this action, the evidence offered to prove the fact of the adultery of the wife, must, in the very nature of the situation, disclose that a child born to the wife is not the child of the husband, or is, in other words, an illegitimate child, that fact is only, so far as the child is concerned, an unfortunate incident of competent proof essential to the establishment of the ultimate fact. At any rate, as before stated, where, as appears to be the uncontroverted fact here, the husband and wife have lived separate and apart for a period of four or five years, it is undoubtedly competent, in an action for divorce on the ground of the adultery of the wife, for the husband, either by his own testimony or that of other witnesses, to prove that, although he has had no sexual relations with his wife during such period of time, she has nevertheless conceived and given birth to a child within said period, the dominant purpose of such testimony not being to establish the fact of the illegitimacy of the child but solely for the purpose of supporting the charge of adultery against the mother of the child, as alleged in the complaint. Obviously, no more forceful or persuasive testimony of the fact of the wife's adultery in a case like the present as to the facts than that disclosing that she had conceived and borne a child within a period of time during which the husband had never had sexual relations with or access to her can be imagined.

The conclusion necessarily following from the foregoing views is that the court below committed error in its action disallowing the proposed testimony, and that the ruling rejecting said testimony was prejudicial, for reasons now to be considered, there can be no doubt.

[2] While testimony of the extrajudicial declarations or verbal admissions of a party is not regarded as very strong or very reliable evidence (see Code Civ. Proc., sec. 2061, subd. 4), still, under the circumstances of this case, the rejected testimony proposed by the plaintiff that the defendant had made statements from which it could justly be inferred that there had been no sexual relations maintained between herself and the plaintiff for a period of four or five years prior to and down to the date of the birth of the child last born to her, would be of singular or

unusual importance and significance upon the issue of adultery, since it appears that the plaintiff with apparent positiveness testified that he had not, at any time, from the date of their separation, some four or five years prior to the date of the birth of said child, down to the happening of said event, had sexual relations with the defendant, while, on the other hand, the defendant asseverated that, notwithstanding that they had lived separate and apart for a number of years, the plaintiff had frequently during said period of separation visited her house in the daytime and maintained such relations with her. There was no other testimony from either side addressed to that question, and hence it is manifest that thereon a direct and pronounced conflict was presented, and thus the importance of the testimony which plaintiff unavailingly attempted to place before the court and into the record. becomes plainly apparent. If said testimony is to be believed (a matter for the trial court to determine), and the statements thus attributed to the defendant are to be interpreted to mean, as with much reason they might be so interpreted, that she, during the period of time alleged to have been mentioned by her, had not sustained sexual relations with the plaintiff, then it would obviously be sufficient to turn the scale upon the issue of adultery in favor of the plaintiff.

[3] 2. The finding that the agreement and the deed in question were procured by means of undue influence is sustained by the evidence.

It was shown that the property described in the instruments in question was, at the time of the execution of said instruments, of the value of $23,000; that part of the land was devoted to the growing of grapes and other fruits, and that the annual proceeds from the sale thereof were amply sufficient to maintain the family; that the defendant at the times mentioned was not aware of the value of the property or the income derived therefrom; that, having had a disagreement with the plaintiff and been mistreated by the plaintiff's children by a former wife, and having also a large part of the time been ill, her mind was so unsettled that she actually was incapable of exercising such judgment in the transaction as would enable her to protect her rights. It was also shown, as the court found, that the negotiations resulting in the execution of the agree-

ment and the deed were conducted by the family physician, who admitted upon the witness-stand that the plaintiff promised him that he (plaintiff) would pay said physician a debt of several hundred dollars due from plaintiff to said physician in the event that he (the physician) succeeded in inducing the defendant to make the agreement and execute the deed. It is made to appear that the wife was without independent advice or advice from some disinterested party or someone employed by her for that purpose, who could have explained to her the importance of the transaction and the consequences thereof.

[4] The relation between a husband and wife is of a confidential nature and the law requires that, in a transaction involving the transfer by the one to the other of property of value, the husband shall act in the highest good faith toward his wife, to the end that he may not obtain any unfair or unconscientious advantage over her in such transaction (Civ. Code, secs. 158, 2228). In other words, as is said by Mr. Greenleaf in his work on Evidence, section 688, there must be in such case no such constraint imposed upon the wife by the husband as to prevent her from exercising her free will with relation to the transaction. [5] Moreover, the rule is that in transactions involving the transfer of property between the husband and wife the latter should have "the benefit of a full, free and private preliminary conference with a competent lawyer or business man who was employed and paid by her in whom she has confidence and who would be devoted to her interest and hers only." (*Pironi* v. *Corrigan*, 47 N. J. Eq. 157, [20 Atl. 227]; *Yordi* v. *Yordi*, 6 Cal. App. 20, [91 Pac. 348], and cases therein cited.) [6] While it is true that the want of a valuable consideration for a contract or agreement between husband and wife involving a transfer of property by one to the other is not of itself sufficient to raise the presumption of fraud or undue influence in the procurement of such agreement, yet where, as here, there is a valuable consideration for the agreement which, when viewed by the light of the confidential relation existing between the parties, is so small as to "shock the conscience," the fact of the inadequacy of the consideration may be considered as a circumstance tending to support

the claim that the consummation of the transaction has not been free from fraud or undue influence. In this case, it is obvious that the consideration is wholly inadequate. The fact is that the amount which the wife appears to have agreed to take in consideration of her relinquishment of all her rights in the property and, indeed, her right to support by the plaintiff, is ridiculously small—in fact, hardly sufficient to support herself and children in a proper manner for a period of two years—and when this is considered together with the other circumstances to which we have above adverted, it is clear that the finding of the court that the agreement and the deed were procured by means of undue influence is sufficiently supported. Indeed, it may justly be said that, upon its face, the agreement is as to defendant so improvident as to give it little, if any, standing in a court of conscience. [7] It is contended, however, that the defendant is not entitled to a rescission of the agreement, for the reason that she postponed rescinding the same for a long period of time after its execution and that she had borrowed the sum of $150, hypothecating the agreement as security for the loan, and that she had received the payments due under the agreement up to the time of the commencement of this action and had not returned or offered to return the same or any amount which she had received under the agreement. The evidence shows that she was not informed or knew of her right to rescind until after she had been so advised by her attorney at the time she employed him to defend the present action. But, manifestly, this is not a case requiring the defendant to restore or offer to restore any money she received from the plaintiff under the terms of the agreement to entitle her to a decree rescinding the same. The money she received under the agreement she used in defraying the living expenses of herself and two children and she thus received from the plaintiff nothing more than she would have been entitled to receive from him before the agreement was executed. The plaintiff, therefore, could not have been injuriously affected by a failure on the part of the defendant to restore the money he paid to her under the contract. Besides, the plaintiff knew, or at least he must have known, that the money he paid to her under the

agreement would be used by her for her support and, therefore, was fully aware of the fact that, in case she did rescind or attempt to rescind the agreement, she would be unable to repay the money paid thereunder, she having no other property or money with which she could repay the amounts received by her. (See *More* v. *More,* 133 Cal. 489, [65 Pac. 1044, 66 Pac. 76]; *Gatje* v. *Armstrong,* 145 Cal. 370, [78 Pac. 872]; *California Farm & Fruit Co. et al.* v. *Schiappa-Pietra,* 151 Cal. 732, [91 Pac. 593]; *Richards* v. *Farmers' etc. Bank,* 7 Cal. App. 387, [94 Pac. 393].)

The judgment must be reversed because of the ruling of the court above considered, excluding testimony offered by the plaintiff of alleged admissions by the defendant that she and her husband had not lived together and had had nothing to do with each other for a number of years prior to the date of the birth of the child last born to her. Accordingly, the judgment is reversed, with directions to the trial court to try *de novo* and so determine the single issue of adultery.

Burnett, J., and Finch, P. J., concurred.