[S. F. No. 15273.   In Bank.—September 27, 1935.]

EDYTH WALSH, Respondent, v. JOSEPH A. MAJORS et al., Appellants.

James Snell and Chester E. Ross for Appellants.

George D. Pollock for Respondent.

THOMPSON, J.—The defendants have appealed from a judgment in favor of the plaintiff on the grounds that the pleadings do not support the judgment, the complaint does not state a cause of action, the evidence does not support the findings and the findings do not support the conclusions of law and the judgment.

The material allegations of the complaint are that, on or about April 26, 1931, Mabel Lola Majors died testate, in the county of Monterey, leaving an estate consisting of real and personal property, a copy of the will being annexed to the complaint and the probate proceedings being incorporated by reference; that, on or about May 25, 1931, defendant Thomas Butler was appointed executor of the estate of Mabel Lola Majors and so qualified; that Edith Walsh, the plaintiff, is the sister of Mabel Lola Majors; that by the terms of the will certain described real property, located on Van Ness Avenue in the city of Watsonville in Santa Cruz County, was directed to be sold and a sum equal to one-half the proceeds was bequeathed to the plaintiff; that the defendants (Butler and Joseph A. Majors, the surviving husband of Mabel Lola Majors) falsely and fraudulently represented to the plaintiff that the value of the described real property did not exceed $1,000; that the defendants knew the representations were false and made them with the intent and design of inducing plaintiff to assign her one-half interest in the proceeds of the sale to Joseph A. Majors; that the reasonable value of the described realty was then and now is $5,000 and that it could at all times mentioned in the complaint have been sold for more than $1,000; that (on information and belief) the real property was not sold as directed by the will but was distributed to Joseph A. Majors on April 18, 1932, and that he has since been the legal owner of the property; that, by the terms of the will, the plaintiff was also bequeathed all of the wearing apparel belonging to Mabel Lola Majors; that the deceased owned at the time of her death two fur coats of the approximate value of $2,000 and other wearing apparel, with regard to which plaintiff asks leave to amend for the purpose of alleging the value when ascertained; that plaintiff believed and relied upon the false and fraudulent representations and, in reliance thereon, executed to Joseph A. Majors an assignment of her interest in the estate on September 1, 1931; that plaintiff's interest in the proceeds of the sale of the described realty was reasonably worth $2,500, that her interest in the wearing apparel was reasonably worth $2,000 and that her entire interest in the estate was reasonably worth $4,500; that as consideration for the assignment she received $500 which was grossly inadequate; that, by reason of the false and fraudulent statements of the defendants and by reason of the

defendants' concealing and withholding the true nature and value of the assets of the estate, plaintiff has been deprived of her just share therein and damaged in the sum of $4,000. It is further alleged that defendant Butler received from the assets of the estate $439.85 for his services as executor and that each of the defendants have in their possession or under their control a portion of the assets of the estate, to a part of which the plaintiff is entitled and which, by reason of the matters alleged, they are holding for the use and benefit of the plaintiff. The prayer of the complaint is for an inventory and accounting of the assets of the estate, a declaration that the assignment is void and the consideration given therefor is a part payment of the plaintiff's interest, a judgment for $4,000 damages and a declaration that Joseph A. Majors is a trustee of the described realty for the benefit of the plaintiff to the extent of $4,000, costs of suit and general relief.

The court found that Mabel Lola Majors, wife of defendant Joseph A. Majors and sister of plaintiff Edith Walsh, died testate on April 26, 1931, leaving real and personal property; that probate proceedings were instituted about May 11, 1931, and that Thomas Butler was appointed executor May 25, 1931; that by the terms of the will the described real property, situated in Santa Cruz County, was directed to be sold and a sum equal to one-half of the proceeds was bequeathed to plaintiff; that the defendants each falsely and fraudulently represented to plaintiff that the true value of the real property did not exceed $1,000; that defendants knew the representations were false and that they were made with the intent and design of inducing the plaintiff to assign her one-half interest in the proceeds of the sale to Joseph A. Majors; that the reasonable market value was and is $5,000 and the property could have been sold for that or more; that the plaintiff's interest in the proceeds is reasonably worth $2,500; that the realty was not sold as directed by the will, but was distributed to Majors on January 18, 1932, who since that date until his death, on or about January 18, 1934, was the legal owner of the property; that on February 2, 1934, letters of administration in the estate of Joseph A. Majors were granted to Fred A. Majors and, on February 19, 1934, Fred A. Majors, as administrator, was substituted for Joseph A. Majors as defendant herein.

With regard to the wearing apparel, the court found plaintiff had been bequeathed all the wearing apparel of her sister;

that at the time of her death Mabel Lola Majors was the owner of two fur coats of the estimated value of $2,000; that after her death the coats were in the possession of Majors at the Majors home in Monterey County at the time they were destroyed by fire; that at the time of their loss by fire they were of the reasonable value of $750; that the sum of $3,050, proceeds of fire insurance covering loss of furniture, fixtures and wearing apparel in the Majors home, was paid to the estate of Mabel Lola Majors and distributed to Majors; that the defendants falsely and fraudulently represented to plaintiff that the wearing apparel of her sister was of small value not exceeding $25; that they knew these representations were false and made them with the intent and design of inducing plaintiff to assign her interest therein to Majors, without paying plaintiff their fair value; that defendants falsely and fraudulently represented to plaintiff that the administration costs of her sister's estate and cost of $1500 for interment in a niche, as directed by the will, were by the terms of the will payable out of plaintiff's interest; that the decedent has not been so interred but was buried at small expense in Castroville; that these false and fraudulent representations, with the others previously found, caused plaintiff to make the assignment of her interest in the estate for $500; that she would not so have assigned if the representations had not been made by. the defendants. The court further found that Butler wrote to plaintiff in Longview, Texas, about June 11, 1931, informing her the amount of her legacy was uncertain; that the purpose and effect of this letter was to cause plaintiff to believe that the debts, funeral expenses and costs of administration were to be paid out of her interest and that such representations were made knowingly, falsely and wilfully with intent to deceive plaintiff as to the value of her interest; that in the letter Butler promised to protect plaintiff's interest in the estate; that by the terms of the will such debts and expenses were not payable out of plaintiff's interest; that plaintiff believed and relied upon the false and fraudulent statements and as a result executed the assignment to Majors on or about September 1, 1931; that on that date her entire interest was reasonably worth $3,250; that she received as consideration therefor $500, which sum was grossly inadequate; that Butler claims an interest in the Watsonville property in the form of a mortgage securing a promissory note alleged to have been

made and delivered by Majors to Butler after the execution of the assignment and after the estate had been distributed; that at the time of making the assignment the plaintiff was ignorant of the true nature and value of the property bequeathed her; that defendants knowingly and fraudulently withheld from her knowledge of its true nature and value and that their collusion, fraud and deceit caused her to make the assignment.

On these findings the court arrived at the following conclusions of law: (1) That the deceit and fraud of Majors was proved beyond a reasonable doubt and to a moral certainty and the collusion and fraud of Majors and Butler was proved by a preponderance of the evidence and therefore the plaintiff had sustained her burden of proof; (2) that plaintiff was entitled to a decree declaring that Majors, at the time of his death, held title to an undivided one-half of the Watsonville property for the plaintiff; (3) that plaintiff have judgment against defendants in the sum of $750 minus $500 theretofore paid to her at the time of the assignment, with interest from January 18, 1932, the date of the decree of distribution, and that the judgment be a lien on the realty prior to the lien of Butler's mortgage; (4) that the assignment is null and void on account of the deceit and fraud of the defendants in its procurement; (5) that in the event an undivided one-half of the realty could not be conveyed to plaintiff free and clear of all encumbrances, the estate of Joseph A. Majors and Thomas Butler pay to plaintiff the full value thereof, $2,500 with interest from January 18, 1932, and that such amount be a lien on the realty; and (6) that in the event the undivided one-half interest could be conveyed to plaintiff free of encumbrances, the estate of Joseph A. Majors account to plaintiff for rents, issues and profits from January 18, 1932. Judgment was entered accordingly.

The undisputed facts establish the following background for the fraud with which the defendants are charged:

Mabel Lola Vallee and Joseph A. Majors were married in 1929. They had been living together prior to marriage and had, in 1923, jointly acquired the Watsonville house, and since then other real property. At some time before her death and in settlement of a dispute between them, Majors had deeded his wife all his interest in the jointly held realty. Mrs. Majors died on April 26, 1931, having a few days before called upon the defendant Butler to draw her will, which was

·executed on April 21, 1931. The relevant parts of the will are as follows: "Second—I request that I be interred in a niche in the Mausoleum at San Jose, Santa Clara County, California, with Mass at the Catholic Church in Castroville. . . . Fifth—I give, devise and bequeath to my said sister, Mrs. Edith Walsh of Stuttgart, Arkansas, a sum equal to one-half of the proceeds of the sale of my real property situate on Van Ness Avenue, Watsonville, Santa Cruz County, California, and all my wearing apparel." There followed a residuary clause in favor of the defendant Majors and the appointment of Butler as executor with instructions "to sell for cash the real property situate on Van Ness Avenue, Watsonville, California, for the best possible price obtainable".

On June 6, 1931, Mrs. Walsh, having heard of her sister's death, wrote to Butler from Longview, Texas, inquiring as to the disposition of the estate. Butler replied, on June 11, 1931:

"You have an interest in the estate of Mrs. Majors, deceased, but at this time I am unable to state what the amount of your legacy will be, because it is uncertain at this time what the debts of the deceased will amount to.

"She was the owner of a dwelling house, in Watsonville, of the probable value of $3000.00, which she has ordered sold by her will and after payment of her just debts and funeral expenses and expenses of administration you were given one half of the remainder of the cash on hand. Your interest will be protected by myself and the Court of Probate wherein the estate is being administered, and after the above expenses have been paid you will receive your share upon the order of distribution when made by said court."

Mrs. Walsh and her husband arrived in Castroville the last of August and went to the home of Majors, their purpose being to attempt to borrow money on Mrs. Walsh's interest in the estate. The day after her arrival, in Butler's office in Pajaro, Mrs. Walsh signed an agreement to assign her interest in the estate to Majors for $500, and, on September 1, 1931, likewise in Butler's office, executed the formal assignment.

The evidence on the question of the representations of Majors and Butler is extremely conflicting. But, disregarding opposing testimony, it appears from the testimony of Mr. and Mrs. Walsh that they approached Majors on the subject of obtaining a loan on Mrs. Walsh's interest in the estate on the

evening of their arrival. Majors said he would see Butler and, on his return from seeing Butler next morning, he told Mrs. Walsh that the only way for her to get any money was for her to sell her interest to him, that he thought he could borrow $450 or $500. Majors at this time told her that "after paying all the bills and selling the property, whatever was left over we were to divide 50–50"; that the expenses of administration, debts and cost of moving his wife's body to a niche in San Jose from her place of temporary burial in Watsonville were such that it was doubtful if there would be $1,000 left and he doubted whether he would get back the $500 he was going to pay plaintiff. The Walshes then accompanied Majors to Butler's office where, according to their testimony, substantially the same statements were made by Butler, that is that there would be practically no estate left after the bills and expenses had been taken care of, and Butler repeated that it was doubtful whether Majors was making a good deal. Nothing was said about the value of the realty itself but the impression was given that it would not sell because it was not good income property and because of the state of the market. Butler admits having told Mrs. Walsh the value of the property after all the debts were paid would be a little over $1,000. Mrs. Walsh signed the agreement and was given $25 by Majors. Both Mrs. Walsh and her husband testified that she asked Butler whether she should have another lawyer and he replied that she need not unless she did not trust him. Mrs. Walsh later went back to Butler's office with Majors and received the remaining $475 and executed the assignment. It thus appears that, while the evidence outlined will support a finding of false and fraudulent statements to the effect that plaintiff's interest was one-half the sum remaining after all debts and expenses had been paid, which sum would probably not exceed $1,000, made by Majors and Butler for the purpose of inducing her to dispose of her interest to Majors for a grossly inadequate consideration, it will not support the finding that they represented to her that the true value of the real property did not exceed $1,000.

Appellants contend that there is a failure of proof in that the misrepresentations proven are not the misrepresentations alleged in the complaint. It is true that the complaint charged a misrepresentation as to the value of the realty in which plaintiff had been left an interest by her sister's will

and the proof showed representations as to the nature and value of plaintiff's interest in her sister's estate. The matter proven so closely approximates the matter alleged that defendants cannot have been misled thereby, hence the variance cannot be considered material. No objection was made on this ground and, had objection been made, the complaint could have been amended to conform to the proof. The representations were admitted by the defendants and the only questions left for the trial court were their falsity, the defendants' knowledge of their falsity and plaintiff's reliance thereon, all of which questions were resolved by the trial court in favor of the plaintiff.

Appellants insist that the finding that the reasonable value of the real property is $5,000 and that it could have been sold for $5,000 is not supported by the evidence. Kallam, a real estate dealer in Watsonville, testified that in his opinion $1750 to $2,000 was its true market value, both in 1931 and at the time of trial. Majors testified he bought it for $1600 in 1923 and had twice tried to sell it without success, and W. H. Daley testified that he had, as agent for a laundry, offered Majors $5,000 for it in October or November of 1931. Appellants object that offers to buy or sell are inadmissible to prove value. In this contention the appellants are undoubtedly correct. However, the testimony of Daley was offered and received without objection. Its weight is a question for the trial court. A similar argument of appellants is that the appraisal of the real estate in the estate proceedings at a value of $5,000 is not evidence of value. It is only necessary to point out that the papers in the estate proceedings were not admitted to prove the value of the property.

Appellants next complain of the finding that, by the terms of the will, plaintiff got all wearing apparel, and that at the time of her death decedent was the owner of two fur coats of the estimated value of $2,000; that after her death and while in the possession of the defendant Majors, they were destroyed by fire and at that time were reasonably worth $750, and that the proceeds of the fire insurance covering furniture, wearing apparel and fixtures in the Majors' home was paid into the estate and distributed to Majors. The argument is made that, since the only evidence on the subject is the testimony of Majors that his wife gave him the coats about a month before her death to dispose of as he wished and the only evidence of

value, aside from the claim presented to the insurance company, is Majors' testimony that he bought them for $150 and $50, the finding is totally unsupported. The court expressly stated that it did not believe Majors' story of the gift of the coats, which was his only explanation for his failure to include them in the assets of the estate. Hence it follows that they still belonged to Mrs. Majors at her death and passed under the will to the plaintiff. This conclusion is further supported by the fact that the insurance money, which was in part obtained for the loss of the coats, was all paid into the estate and listed in the first and final account and petition for distribution. As to the value of the coats, Majors testified when new they were worth $750 and $2,000, that they were three or four years old at the time they were destroyed by fire and that he put in claims for them with the insurance company valuing them at $1750 and $750. Majors' statements regarding the circumstances under which he purchased the coats indicate that they were purchased at what amounted to forced sales and for far less than their actual value, from persons who had to dispose of them in great haste. They were both purchased second hand.

The contention of appellants that finding IX with respect to representations that the wearing apparel of decedent did not exceed $25 in value is not supported by the evidence must be sustained. There is a complete absence of proof of any such representation. However, this erroneous finding does not prejudice the appellants' rights nor necessitate a reversal of the judgment, as will hereafter appear.

Appellants seek to show that plaintiff did not, as found by the court, believe and rely upon these various representations, by pointing to evidence that she knew the contents of her sister's will and that she considered the $3,000 valuation put upon the realty by Butler as too low, because her sister had told her she had refused $4,750 for it and was holding it for $7,000. We have already held that the finding of misrepresentations of the value of the realty is not sustained by the proof. Knowledge of the value of the realty and of the contents of the will does not affect plaintiff's reliance upon repeated statements made to her by her brother-in-law and the executor of her sister's estate, both of whom were in a much better position than the plaintiff to know the actual state of affairs, that her interest was not determinable until

all debts, funeral expenses and costs of administration had been met and that probably the estate would not net more than $1,000. These statements of the defendants were reinforced by a discussion of specific expenses such as $1500 for interring the deceased, and by statements that Majors was making a gamble in paying her $500 for her interest. Defendant Butler insists that this is a misrepresentation of law, at most. It is a misrepresentation of the nature and value of plaintiff's interest, even though the reasons given for its small value may have involved misrepresentations of law.

■ The record as a whole, as well as the findings and evidence just discussed, amply support the conclusion that both Majors and Butler falsely represented to the plaintiff that her interest in the estate of her sister was half of the residue after all expenses had been met, which in all probability would not amount to $500, whereas she was entitled under the will to one-half the proceeds of the sale of a specific piece of realty, which interest was reasonably worth $2,500; that Majors concealed and appropriated the two fur coats to which plaintiff was entitled under her sister's will and that Butler either connived with Majors in their concealment or was derelict in his duty as executor in not making an investigation and inventory of the assets of the estate and taking proper precautions for their preservation, which was a breach of his fiduciary relationship to plaintiff as a legatee under the will; that, because of the fraud of the defendants and in reliance upon their representations and upon the assurances of Butler that as executor of the estate he would look after her interests, the plaintiff was induced to part with her interest in the estate for the grossly inadequate sum of $500, and that by means of this assignment defendants procured the distribution of the entire estate to the defendant Majors.

Turning to the pleadings, it is clear that the plaintiff attempted to state a cause of action for equitable relief from a decree of distribution obtained by fraud, seeking to have the defendants declared to be involuntary trustees of that which they had gained by the fraud and, as alternative relief, alleged she had been damaged in the sum of $4,000 and asked for an award of damages in that amount. ■ Equitable jurisdiction to grant relief from fraudulently obtained judgments and orders in probate by declaring the beneficiary a trustee for those defrauded is well settled. (*Caldwell* v. *Tay-*

*lor,* 218 Cal. 471 [23 Pac. (2d) 758, 88 A. L. R. 1194], and cases there cited.)

That the case was tried upon the theory of a constructive trust appears from the statement of the defendant Butler, who appeared as attorney for himself and his codefendant Majors. It is now contended that no cause of action in equity for the rescission of the assignment has been stated because it is not alleged that, prior to the suit, the plaintiff restored or offered to restore the consideration received by her, nor does the complaint itself contain such an offer. Under the circumstances we do not consider such failure fatal to the cause of action the plaintiff has attempted to set forth. The same objection was made in *More* v. *More,* 133 Cal. 489 [65 Pac. 1044, 66 Pac. 76], where the defendants conspired together to fraudulently acquire the interest of the incompetent plaintiff in the estate of his father and deeds were procured in pursuance of the conspiracy. No attempt to rescind was made prior to suit, although an offer to restore was made in the complaint. The court there held that rescission is only one of the remedies in case of fraud, that the most common relief is for a court of equity to declare the defrauding party an involuntary trustee of the property obtained by fraud and that the rigid rules with regard to restoration of the consideration prior to suit apply only to rescission by act of the parties, the power of a court of equity to cancel a fraudulent contract upon appropriate terms and conditions being much broader, although the court may refuse to exercise its power for failure of the injured party to exercise his right to rescind. Exceptions to the general rule that one seeking rescission in equity must as a condition precedent to action promptly rescind and restore or offer to restore what he has received are cases in which by reason of special circumstances it has on general equitable principles become unfair to impose such a condition of relief. (*California Farm & Fruit Co.* v. *Schiappa-Pietra,* 151 Cal. 732 [91 Pac. 593].) The circumstances of the instant case have been recognized as creating an exception. The plaintiff has received nothing to which she was not entitled independently of the contract and the defendant Majors has received from the trust estate more than the amount paid by him to the plaintiff as consideration in the original transaction. Moreover, the defendant is unable to return a portion of that which he received, the coats having been destroyed by fire. (*Gatje* v.

*Armstrong,* 145 Cal. 370 [78 Pac. 872]; *Hilton* v. *Hilton,* 54 Cal. App. 142 [201 Pac. 337]; *Richards* v. *Farmers' Bank,* 7 Cal. App. 387 [94 Pac. 393].) In this situation the claim of the defrauding party will be treated as extinguishing, as far as it will go, the claim of the defrauded plaintiff. (*Gatje* v. *Armstrong, supra.*) The judgment has allowed the $500 paid by Majors to the plaintiff as a set-off against the $750 awarded as damages for the coats.

A judgment against the estate of the defendant Joseph A. Majors declaring him a trustee for the property wrongfully received under the decree of distribution, directing a conveyance thereof to the plaintiff, or if this cannot be had, holding him responsible for its value, is clearly correct. (*Sohler* v. *Sohler,* 135 Cal. 323 [67 Pac. 282, 87 Am. St. Rep. 98].) Appellants complain, however, that the judgment in the instant case does more than direct the return of the property received or its value in that it directs a conveyance of an undivided half-interest in the real property "free and clear of encumbrances". Their contention is that this direction should be limited to encumbrances placed upon the property by Majors after his wife's death. It appears that the property was mortgaged at the death of Mrs. Majors but that the mortgage loan was fully discharged within a few months of her death and before distribution, the payments being made from the rental received from the property. It does not appear that there were other encumbrances at the time of her death, but if any such existed the plaintiff should take subject thereto.

By the judgment the defendant Butler was made liable with the estate of Joseph A. Majors for $2,500, the value of an undivided one-half interest in the real property, if conveyance could not be had, and $750, the value of the coats, minus $500, the consideration paid for the assignment. Both sums were made a lien upon the real property prior to the lien of the Butler mortgage.

The postponement of Butler's mortgage lien is correct, either upon the theory that he has in his hands, as alleged in the complaint, that portion of the assets of the estate to which plaintiff was entitled as the fruit of his fraud, or upon the theory that by reason of his participation in the fraud he is not a *bona fide* encumbrancer, but took with knowledge of the trust for plaintiff.

Butler's liability for the value of an undivided half of the real property if it cannot be conveyed and for the value of the fur coats must rest upon a different basis. Admittedly the entire estate was distributed to Majors. Butler cannot therefore be charged as a constructive trustee, but must be held in damages for deceit. Any damage suffered by the plaintiff must, it is apparent, be contingent upon the failure or inability of the estate of Joseph A. Majors to return to the plaintiff the property which was wrongfully distributed to Majors. In this connection it is argued that, having asked that the assignment be declared void and for a restoration of that with which she had parted by the assignment, it is not open to the plaintiff to ask for damages for the fraud, that rescission and an action for damages are independent remedies and the plaintiff must elect which to pursue.

In an equitable action for rescission of a contract on the ground of fraud the plaintiff may state the facts surrounding the transaction and pray for any and every kind of relief to which under the facts he may show himself entitled, including a claim for damages. It has been held in such a situation that when the jurisdiction of equity attaches for any purpose it attaches for all purposes, among others, for assessing and awarding damages where damages are proper, as where rescission has become impossible, it being the duty of a court of equity to adjust all the differences arising from the cause of action presented and to leave nothing for further litigation. (*Montgomery* v. *McLaury,* 143 Cal. 83 [76 Pac. 964]; *Murphy* v. *Sheftel,* 121 Cal. App. 533 [9 Pac. (2d) 568].) We see no essential difference between those cases and the course pursued by the plaintiff. She has asked to have the fraudulent distributee declared a trustee of the property which he obtained by the fraud of himself and Butler; she also asks for damages in the sum of $4,000 and for other and further relief on the facts. There is nothing inconsistent in asking for restoration of the property by the defendant who wrongfully received it and, if this is impossible, a judgment for damages against both defendants whose fraud caused the loss, and the court may grant any relief embraced within the issues and consistent with the case made by the complaint.

The trial court imposed a lien upon the real property for the value of the coats less the amount of the consideration received by the plaintiff. This was improper. Since the realty

was distributed to Majors at the same time as the proceeds of the insurance policy upon the coats, there is no possibility that the trust funds were used in the acquisition of the realty, nor is there any proof that they were used in improvements or paying off encumbrances or in any way applied upon the realty. The equitable lien of the beneficiary depends upon his being able to trace the trust property into the particular property against which he seeks to enforce the trust, or a commingling with the fund upon which he asserts his lien. Some degree of identification with the property which he seeks to subject to his claim is essential. (Pomeroy's Equity Jurisprudence, vol. 3, sec. 1058, p. 2420; *Mitchell* v. *Dunn*, 211 Cal. 129 [294 Pac. 386].)

In accordance with the conclusions the judgment is modified by striking therefrom the provision that the plaintiff shall have a lien on the real property for the value of the fur coats less the amount of the consideration received by her. As so modified the judgment is affirmed.

Seawell, J., Shenk, J., Langdon, J., and Waste, C. J., concurred.